[Civil No. 4002.   Filed May 23, 1938.]

[79 Pac. (2d) 510.]

DEL E. WEBB, Petitioner, v. ANA FROHMILLER, as State Auditor of the State of Arizona, Respondent.

Mr. Charles L. Strouss, for Petitioner.

Mr. Joe Conway, Attorney General of Arizona, and Mr. Earl Anderson, Special Assistant Attorney General, for Respondent.

LOCKWOOD, J.—Del E. Webb, hereinafter called plaintiff, filed an original petition in this court against Ana Frohmiller, as state auditor, asking for a writ of *mandamus* to compel her to approve a certain claim presented by him. The facts are in nowise in dispute, and may be stated as follows:

In 1933, the Eleventh Legislature, at its First Special Session, adopted chapter 8, commonly known as the income tax law, and in chapter 80, section 1, of the Regular Session of 1935, the Twelfth Legislature amended chapter 8 by adding a section containing the following language:

"Section 49 (d). *Appropriation.* For the purpose of carrying out the provisions of the Income Tax Act of 1933, from and after the thirtieth day of June, 1935, there is hereby appropriated to the tax commission out of the general fund such amount as may be necessary for the effective administration of the act, but not to exceed four per cent (4%) of the total revenues collected hereunder during each calendar year or fraction thereof as determined by the receipts therefrom by the state treasurer. The appropriation herein made shall be exclusive of and in addition to the appropriation contained in the general appropriation act for the use and benefit of the state tax commission, and exclusive of and in addition to the appropriation

contained in the general appropriation act for the use and benefit of the state tax commission in the administration of the Income Tax Act of 1933. Any other provisions of law notwithstanding any unexpended balance of the appropriation made hereunder shall not be subject to the provisions of the financial code and shall not revert to the general fund at the end of the fiscal year, provided that any unexpended balance remaining of the appropriation herein made shall revert to the general fund on the thirty-first day of December of each year.''

In the session last mentioned the legislature adopted chapter 77, commonly known as the sales tax law, and chapter 78, commonly known as the luxury tax law. Chapter 77, article 3, contains the following provisions:

''Sec. 2. For the purpose of carrying out the provisions of this act, there is hereby appropriated to the tax commission out of the taxes collected hereunder an amount not to exceed four per cent of the taxes collected each month hereunder, which appropriation shall be credited by the state treasurer to a special fund to be known as the license fee and privilege tax administration fund. The necessary expenses of the administration of this act shall be paid out of the license fee and privilege tax administration fund upon claims duly itemized, verified and approved by the tax commission, which claims shall be presented and filed with the state auditor who shall draw his warrant therefor on the state treasurer, and the state treasurer shall pay the same out of the license fee and privilege tax administration fund. No expenditures shall be made by the tax commission in excess of the amount herein appropriated.''

While section 2 of chapter 78, article 4, contains this language:

''For the purpose of carrying out the provisions of this act, there is hereby appropriated to the state tax commission out of the taxes collected hereunder an amount equal to four per cent of the taxes collected

each month hereunder. The necessary expenses of the administration of this act shall be paid upon claims duly itemized, verified, and approved by the state tax commission, which claims shall be presented to and filed with the state auditor who shall draw his warrant therefor on the state treasurer, and the state treasurer shall pay the same out of the luxury tax administration fund. No expenditures shall be made by the state tax commission in excess of the amount herein appropriated.''

In the year 1937, the Thirteenth Legislature, at its regular session, adopted chapter 56, which reads, in part, as follows:

''Section 1. *Appropriation.* (a) Notwithstanding the limitations imposed by section 3021, Revised Code of 1928, all moneys standing to the credit of the legislative, executive and judicial public buildings land fund are appropriated to the board of directors of state institutions, for the purpose for which said fund was created, namely, the erection of an addition to the state capitol, to be known as the department of justice building, for the housing of the supreme court, the attorney general's offices, and the several divisions of the state library, and to be expended in the manner and under the terms and conditions hereinafter expressed.

''(b) In addition to the appropriation contained in subsection (a), the sum of one hundred twenty thousand dollars is appropriated out of the general fund for the employment of labor and other necessary expenditures in connection with the erection of said addition to the state capitol, and the general fund shall be reimbursed, at the rate of not less than ten thousand dollars per month, to the amount of said appropriation, out of the governor's relief fund (section 21, chapter 77, Session Laws of 1935, Regular Session).

''Sec. 2. *Conditions.* (a) Said appropriations are conditioned upon the allocation, by the federal emergency administration of public works, under the terms of that certain public works project application known as application number Arizona 1040–1, or other agree-

ment between the state of Arizona and the federal government or any agency thereof, of approximately forty-five per cent of the cost of erection of the proposed addition to the capitol building.''

Section 1, subdivision (b) was amended as to amount by chapter 2 of the First Special Session of 1937, section 12, but was left the same otherwise in substance.

Pursuant to said chapter 56, a contract was entered into with the federal government, whereby it furnished the requisite percentage of the cost of the proposed building, as set forth in section 2 of chapter 56, *supra,* and the board of directors of state institutions advertised for bids for its erection. The advertisement called for certain alternative proposals, and when the bids were opened, it was discovered that if all the alternative proposals were accepted, there was not a sufficient appropriation under chapter 56, *supra,* to meet the entire cost of the building. The board, therefore, omitted many of the alternative proposals, and let a contract to plaintiff for the sum of approximately $443,000, which was within the appropriation under chapter 56, *supra,* and construction was commenced. The contract also provided that the alternative proposals might be added to the job at the option of the board and extras called for, all on terms specified in the contract.

The tax commission, which was charged with the administration of the three tax laws above mentioned in connection with its many other duties, had been housed from the time of its creation in the original capitol building, and as its duties grew the space needed by it necessarily increased until, when the addition to the capitol was commenced as above set forth, its accommodations were seriously overcrowded, so much so indeed that it could not function at the greatest efficiency. On the 14th of April, 1938, therefore, it adopted a resolution stating that its quarters were in-

adequate, and that the board of directors of state institutions had allotted to it certain quarters in the new building, provided the tax commission would make all additions, changes and alterations in the quarters assigned, and install the equipment and furnishings necessary for carrying on its business in the new quarters out of its own funds. Among the alterations and additions desired by the commission were many partitions and new doorways, the finishing of the basement so that it could be used for office purposes, much structural alteration of the present quarters occupied by the Attorney General, and the furnishing of machinery and equipment necessary for the cooling and ventilation of the new quarters of the commission. Most of these items had been included in the various alternative bids called for by the board, as aforesaid, but rejected on account of the lack of a sufficient appropriation to pay for them. The total cost of the work which the commission desires to do, as aforesaid, is approximately $53,000. The commission agreed to make available from its appropriations for the administration of the income tax, privilege sales tax and luxury tax, as aforesaid, such sums of money, not exceeding $53,000 as might be necessary to pay the cost of the alterations and improvements aforesaid, and the board of directors of state institutions thereupon made a change order in the original contract with plaintiff, adding to the contract, as its terms permitted, the alterations and extras designated by the tax commission in its resolution as being necessary to properly equip its new quarters. Thereupon the plaintiff furnished a fan to be used in the cooling system to be built as aforesaid, at the agreed price of $225, and presented his claim to the state auditor, this being the claim upon which this petition is based. The auditor refused to pay the claim, whereupon this suit was brought. The auditor demurred to the petition, and

also moved to quash it, and then answered, alleging (a) that the tax commission had not advertised for, nor received bids for the expenditure proposed, as aforesaid, as required by law; (b) that the cooling system proposed by the tax commission was more than adequate to cool and refrigerate its quarters in the new building, and was really intended to cool the entire new addition, and (c) that the legislature, in its regular session, 1937, made a provision for capital investment for the tax commission, but did not provide therein funds for the installation of a cooling system, nor for any of the proposals for which the commission seeks to use its funds, as aforesaid. The plaintiff demurred to the answer, and the parties then joined in a request for judgment on the pleadings.

There are three questions raised by the parties in their briefs, (a) is the expenditure of the sum proposed by the tax commission authorized without the commission first calling for bids, (b) may the money appropriated for the tax commission, under the provisions of the three acts as above referred to, be used to pay for improvements, in the addition to the capitol building, of the character above set forth, and (c) if it may be used at all for that purpose, can it be used to install a cooling system sufficient to cool the entire addition?

We think the case can, and should be, disposed of on the second proposition. It is axiomatic that no money can be paid from the state treasury unless and except the legislature or the Constitution itself has made an appropriation therefor, and it can only be used then for the purposes specified by the appropriation. *Crane* v. *Frohmiller*, 45 Ariz. 490, 45 Pac. (2d) 955. The general proposition is not, and cannot be, disputed by plaintiff, but it is contended that the legislature has made an appropriation to the tax commission of four per cent., respectively, of the

collections of the income tax, the sales tax and the luxury tax, in such a manner that it can be expended for the objects now desired by the commission and set forth above. That an appropriation of the amount stated was made is true, but it is necessary before money may be drawn from the state treasury not only that the appropriation shall be made, but that it shall appear that the money is to be applied to the purpose of that appropriation. What are those purposes? They are stated in substantially the same language in each of the three acts. That language is, in substance,

"For the purpose of carrying out the provisions of this act there is hereby appropriated . . . The necessary expenses of the administration of this act shall be paid. . . ."

It is evident that the sole and only purpose for which the money was appropriated, and for which it may be expended, is the administration of the respective acts. Anything which may be considered as reasonably necessary and proper for the commission to do in the administration of the acts may be paid for out of the appropriation, but anything, no matter how desirable in itself, which is not reasonably to be classed as a cost of administration is not permissible. The word "administration" means "managing or conduct of an office or employment; the performance of the executive duties of an institution, business, or the like." Webster's New International Dictionary. In other words, the expenditures which are reasonably necessary to enforce the provisions of the three acts, and without which they cannot be carried on to effect, are properly classified under the head of administration. Among the things which are usually classed as the cost of the administration of a law are the salaries of the officers and employees who enforce it, the office

expenses which are necessary in the performance of their duties, the cost of travel, if the laws be of a kind to require travel for their enforcement, and the like. But we think that it is a strained and unusual use of the word ''administration'' to apply it to matters that are ordinarily classified both by the legislature and by accounts in general under the head of ''capital investment.'' It is true that there might, perhaps, be a sudden emergency arising where expenses of administration would include the renting of office room, but the proposal of the commission goes far beyond any of these things. The proposal, putting it in the plainest terms, is that the commission should pay the expense of completing an addition to the capitol out of the funds appropriated for the administration of certain specific laws because the legislative appropriation for that purpose is insufficient to complete the building in the manner the commission and the board desire. That the purpose is desirable cannot be doubted, but we are brought back to the original premise of this opinion, which is that appropriations of state funds must be made by the legislature, and it alone, and must be spent for the purpose it has designated. In chapter 56, *supra,* it made an appropriation sufficient, in its judgment, for the completion of the capitol addition. It designated the sources from which this appropriation should come, and knew its amount. Had it desired and intended that the tax commission should use any of its administrative funds to supplement the funds therein specified, it could, and doubtless would, have said so. The intent of the legislature is the cardinal principle of interpretation of statutes, and we are convinced beyond a reasonable doubt that in making its appropriation for the administration of the three revenue acts above stated, it at no time contemplated that any portion of that appropriation should be used for the purpose of as-

sisting in the construction and completion of an addition to the capitol building.

It may be, as has been suggested, that the delay necessary to the securing of a supplemental appropriation by the legislature to complete the building in the manner in which we should all desire it to be completed will increase its final cost, so that it is in the interest of the state that the expenditure be approved. The argument is economically alluring and specious, but we think it is unsound legally. It is far better for the state, in the long run, that the expenditure of public funds should continue to be limited to the amount and purpose designated by that body which, from time immemorial under the common law and by the express language of our Constitution since statehood, has held the public purse-strings, than that the argument of convenience and expense should result in the setting of an unconstitutional and most dangerous precedent for the future.

Since the legislative appropriation on which this application was based did not authorize expenditure of the money in question for the purpose for which it is sought to be used, the petition for the writ is denied.

McALISTER, C. J., and ROSS, J., concur.