**99 P.2d 447**

**AMARILLO–PECOS VALLEY TRUCK LINES, Inc., et al. v. GALLEGOS, Commissioner of Revenue.**

**No. 4461.**

Supreme Court of New Mexico.

Jan. 19, 1940.

Joseph L. Dailey and Waldo H. Rogers, both of Albuquerque, for appellants.

Simms, Modrall & Seymour, of Albuquerque, for appellee.

MABRY, Justice.

Appellant, as plaintiff below, filed suit for injunction against defendant and appellee, seeking to enjoin him from the collection of certain mileage tax which plaintiff charges was excessive and illegal. Upon hearing, judgment was rendered for defendant and the case dismissed.

Plaintiff is an operator of a line of trucks duly licensed by the State Corporation Commission, but responsible to the Commissioner of Revenue for the mileage tax properly imposed.

For a determination of the issues here presented we are called upon to interpret paragraphs (b) and (d) of Sec. 9, Chap. 224, Laws of 1937, which are from the mileage tax statute under which defendant, the Commissioner of Revenue, was attempting to act.

Paragraphs (b) and (d) of the aforementioned act provide, with reference to the method and manner of taxing the class of vehicles in question, as follows:

(b) "* * * The ton capacity of all such vehicles shall be based, as to all trucks which have not been changed or rebuilt subsequent to their original manufacture, upon the *factory list capacity* thereof, and upon all trailers and semi-trailers and all rebuilt or changed trucks upon the *actual capacity* thereof." (Italics ours.)

(d) "For the purpose of computing the charges hereby imposed, every trailer and semi-trailer shall be considered as a separate vehicle."

Plaintiff challenges the method used by the defendant for computing the tax imposed upon the semi-trailer units, which appear to be somewhat extensively employed by it in its trucking operations.

A semi-trailer is defined as follows: "Every vehicle of the trailer type so designed and used in conjunction with a motor vehicle that some part of its own weight and that of its load rests upon or is carried by another vehicle." Chap. 11, Art. 3, § 11-301 (f), N.M.Comp. Laws, 1929.

■ Doubtless, but for the statute above referred to, the semi-trailer would not be classified as a separate vehicle. We know that without the aid of the truck tractor to which it is attached it is powerless to move its load. We also know that without the carrying capacity of the semi-trailer body the truck tractor or power unit would be useless as a facility for transportation. Ordinarily, it would take both to constitute a complete transportation unit. 5 Blashfield Cyc. of Automobile Law and Practice, Permanent Edition, § 3176, page 339; Leamon v. State, 17 Ohio App. 323. However, our statute has, for the purpose of fixing this mileage tax, provided that trailers and semi-trailers shall be considered as "separate vehicles." The purpose to impose a heavier burden on semi-trailers is clear and ambiguity of language is wholly lacking. The statutory definition therefore controls.

The New Mexico statute provides a graduated mileage tax of from ⅛ of one cent per mile for freight carrying vehicles of 1 and ½ tons or less to 1 and ½ cent per mile for loads in excess of five tons.

The controversy here so far as we need note resolves itself about the answer to two questions, viz: First: what is the method to be employed in determining the "actual capacity" of a semi-trailer? That

is to say, is the entire load carried by and upon the frame of the semi-trailer unit to be chargeable to the semi-trailer in the computation of the tax, or should there be charged only the proportion thereof whose weight actually rests upon the axle of the semi-trailer? It is conceded that the particular type of semi-trailer used by plaintiff has a distribution of weight of something like 60% resting upon the axle of the semi-trailer unit and 40% actually resting upon the truck or tractor unit to which it is attached.

Second: Assuming that the entire load is to be charged to the semi-trailer in determining "its actual capacity", does this then not constitute an unlawful and unjust discrimination and therefore a violation of plaintiff's constitutional rights in view of the fact that a different rate of tax is levied upon what is called truck body units where there is no trailer or semi-trailer involved?

Counsel for plaintiff contends that defendant has improperly interpreted the law which he is called upon to administer in the collection of this mileage tax. He argues that in computing the "actual capacity" of the semi-trailer the load should be apportioned in approximately the ratio above shown and not upon the basis of charging the entire load to the semi-trailer taxes as a separate vehicle and unit. That is to say, there should be a separation of the gross pay load charging some to the tractor unit and some to the semi-trailer. Plaintiff argues that only the "axle" capacity, that portion of the load resting upon the axle of the semi-trailer, is the weight upon which the tax upon the semi-trailer unit should be computed. We do not determine here which would be the fairer method of taxation. We determine simply what the language means and thereby how the legislature intended to classify for taxation purposes, and, as we hereinafter show, whether such classification is reasonable.

We hold that the legislature in separating the tractor and semi-trailer units for the purpose of this mileage tax, and providing that such semi-trailers would be taxed upon the basis of their "actual capacity", meant to tax upon the load carried "within the frame" of the semi-trailer and regardless of the fact that a substantial part of the weight of the load rested upon the separate power or tractor unit. We can find no logic to support plaintiff's theory when we face the plain language of the statute; and particularly, viewing, as we must, the possibility that the legislature intended to place a heavier burden upon the semi-trailer type of freight carrier which the trial court, upon ample evidence, has found to be of cheaper construction and generally more hazardous to highway traffic.

It is argued that if we accept defendant's interpretation of the act plaintiff is then denied his constitutional rights under both the Federal and the New Mexico constitutions, that of due process of law and equal protection of the law.

Plaintiff urges that there is no basis in logic or reason to support defendant's claim of material differences and substantial distinctions between the semi-trailer combinations in question and the full body truck jobs to justify the much greater advantage which the latter has under the taxing statute. Plaintiff is unable to see that difference between the types from the standpoint of either public safety in their use or in highway damage which would justify the classification for such taxing purposes.

It is to be conceded that the legislature had the right and was acting well within its power to make the classification between two types of freight hauling units if it can be said that the classification is a reasonable one. The courts in considering questions of· this kind do not inquire into the motives impelling legislative action nor are they concerned with the wisdom, policy, or expediency of the law. This rule is of universal application and citation of authorities seems useless. But see Wagner v. City of Milwaukee, 180 Wis. 640, 192 N.W. 994; Anthony v. Commonwealth, 142 Va. 577, 128 S.E. 633; Railroad Comm. of Texas v. San Antonio Compress Co., 114 Tex. 582, 278 S.W. 1115; Id., Tex.Civ.App., 264 S.W. 214; Union Steam Pump Sales Co. v. Deland, Secretary of State, 216 Mich. 261, 185 N. W. 353; Grossfeld v. Baughman, 148 Md. 330, 129 A. 370.

The classification must be reasonable, but, necessarily a state has a wide range of discrimination in distinguishing, selecting and classifying subjects of taxation. Davy v. McNeill et al., 31 N.M.' 7, 240 P. 482, and cases cited; 12 Amer.Jur. Sec. 519, pages 212, 213.

It might appear at first blush to be discriminatory legislation to tax a semi-trailer unit carrying the same load at a higher rate than that which would apply to an ordinary truck equipped with a single unit body job.

Counsel for plaintiff has assembled an array of somewhat convincing authority ·to the effect that it is the "wheel loads" and not the "gross loads" of vehicles which rule the question of highway stresses and resultant damages. This in support of his argument that the semi-trailer attached to such truck tractor for power, and where there are therefore more wheels for distribution of the load, affords a type of vehicle less likely to damage the highway. Witnesses likewise testify to the fact; and yet, the court made findings which may not be disturbed, supporting defendant's theory that there are many other considerations which might have presented themselves in the legislative calculations of which type of freight carrying vehicle should, as a matter of policy, bear the heavier mileage tax.

Plaintiff cites and relies upon the recent case of State v. Vanderhule, 59 S.D. 251, 239 N.W. 485, where in a criminal prosecution involving the question of overloading a truck tractor it was held that portion of the weight and load of the semi-trailer which is borne by its own axle was

not to be computed as part of the gross weight of the truck tractor to which it was attached. This case may be distinguished from the one at bar. It arises simply upon a criminal prosecution for the overloading of the truck tractor unit. The South Dakota court does not there have under consideration a statute like our own, making the semi-trailer a "separate vehicle" for the purpose of fixing the mileage tax. Likewise other authorities cited are not controlling here. We do not say it is the *fairest* way to thus classify as "separate vehicles" this type of vehicle. We observe simply that the state has by statute done so, and that within the limitation of passing upon the reasonableness of the classification we are bound thereby.

"Capacity" of vehicles described in the New Mexico act is a term used in two ways, one of them refers to the "factory list capacity" and the other to "actual capacity." Upon all trailers, semi-trailers and rebuilt or changed trucks the mileage tax imposed is measured by their "actual capacity." The legislature had a right to make the distinction in any classification if it be not purely arbitrary. Plaintiff says the language of the act when the term "actual capacity" is used is indefinite and ambiguous unless its own interpretation of the term is accepted. We think not.

 Regardless of whether it is the best and fairest method, a state may levy the tax upon the maximum load or actual capacity of its freight hauling vehicles using the public highways (Roadway Ex-

press v. Murray, D.C., 60 F.2d 293) and this regardless of whether such a capacity, or maximum, load may be often carried. The state has by this legislation clearly adopted a policy for such taxation, imposing a higher mileage tax upon some types of vehicles than others. As to whether it had a right to do so we need not inquire further than to determine that the distinction made was not wholly arbitrary. This we do. The trial court made certain findings of fact which strongly militate against the argument of counsel for plaintiff to the effect that there is no basis for the distinction sought to be made and that the discrimination is wholly unwarranted and therefore unconstitutional.

For example, the court in substance made the following findings of fact: A truck body job is shorter in length and is less hazardous in the highway than a semi-trailer; a truck body job loaded travels at higher speed than semi-trailer unit, this being particularly true on hills; semi-trailers require more experienced operators than do truck body jobs; semi-trailers are subject to "jack-knifing" while body jobs are not; truck body jobs have better traction than trailers, and the original cost of semi-trailers is less than truck body jobs and the cost of operation is considerably less. All such findings are amply supported by evidence, though much of it sharply conflicting. We do not weigh the conflicts nor disturb the findings when so supported. That is elementary. We then find it not difficult to reconcile this classification of

such vehicles for the purpose of fixing mileage tax for use by them of the public highways of the state, with a public policy, into the soundness of which we do not inquire.

Plaintiff further argues for a strict interpretation of any tax statute against the taxing authority, the state. It cites authority to the question that the taxing authority being a creature of the statute has only such power as is given by statute, and that definitely clear authority must be found therein or it does not exist. Without appraising the statute under discussion as one necessarily calling for anything but that interpretation ordinarily given to acts of simple and unambiguous language, we might nevertheless observe that in Southern Pacific Railway Co. v. State, 34 N.M. 479, 284 P. 117, we laid down the following rule for such construction. It is that: "Statutes imposing taxes and providing means for the collection of the same should be construed *strictly* in so far as they may operate to deprive the citizen of his property by summary proceedings or to impose penalties or forfeitures upon him; *but otherwise* tax laws ought to be construed with *fairness, if not liberality,* in order to carry out the intention of the legislature and further the important public interest which such statutes subserve." (Italics ours.)

Plaintiff suggests as an additional objection to this tax statute with defendant's interpretation thereof, that it is double taxation. We think not. There is simply one fee charged against the truck tractor unit for the use of the highways and likewise another charged against the carrying capacity of the vehicle for the same privilege. The classification being reasonable and uniform as to like types the statute is legally unobjectionable. See Price-Bass Co. et al v. McCabe, Commissioner, 161 Tenn. 67, 29 S.W.2d 249.

Moreover, it may be said in this connection that we have no constitutional inhibition against double taxation, in the sense frequently used. The requirement that must be met to escape the stricture of it being illegal, is that such taxes must be "equal and uniform upon subjects of the same class." State ex rel. Attorney General v. Tittmann, 42 N.M. 76, 75 P.2d 701, 703. And likewise, the Federal constitution does not afford protection against double taxation by the authorities of a state. Baker v. Druesedow, 263 U.S. 137, 44 S.Ct. 40, 68 L.Ed. 212; Kidd v. Alabama, 188 U.S. 733, 23 S.Ct. 402, 47 L.Ed. 669, all cited in State ex rel. Attorney General v. Tittmann, supra.

In the case of State ex rel. Attorney General v. Tittmann, supra, we quoted with approval the following statement upon the question of double taxation: "'Double taxation' means taxing twice, for the same purpose, in the same year, some of the property in the territory in which the tax is laid, without taxing all of it. If all the property in the territory on which the tax is imposed is taxed twice and for the same purpose and in the same year without dis-

crimination or exemption, this is not double taxation in the sense that such taxation is objectionable, because, within constitutional limits, if the tax is uniform, the amount of it is in the discretion of the taxing authorities, and it may all be levied at one time, or it may be the subject of several levies." 26 R.C.L., Title: Taxation, Par. 231.

Finding no error, the judgment will be affirmed, and, it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.