220 P.2d 1069

KELLY, State Treasurer, et al. v.
BASTEDO.

KELLY, State Treasurer, et al. v.
SMADBECK.

No. 5089.

Supreme Court of Arizona.

July 15, 1950.

one Charles V. Bob. Bob pledged to Heckscher 10,000 shares of stock of the Pacific Hotels Company, an Arizona corporation, whose sole property was the Westward Ho Hotel. In 1940, the name of the Pacific Hotels Company was changed to Westward Ho Hotel Company. Bob disappeared leaving Heckscher to learn that his stock was not an authorized issue, and that the authorized stock was pledged to a Chicago bank. Heckscher took up Bob's notes at that bank and became the owner of the stock. Later he loaned money to the Corporation and at the time of his death he had over $1,100,000.00 invested in it.

On April 4, 1938, Heckscher made a gift of all of his stock in the company to his wife Virginia. This stock was all of the outstanding stock except for qualifying shares in some other persons. Heckscher made a gift tax return to the U. S. Bureau of Internal Revenue but paid no tax thereon because the stock was considered worthless. At that time the company was indebted to Heckscher in the sum of $613,000.00, which debt was evidenced by promissory notes and secured by mortgages upon the corporate property.

August Heckscher died April 26, 1941 in the city of New York leaving his wife, Virginia, the residuary legatee under the terms of his will. Up to the time of his death he was president and director of the company and through his office in New York which managed his many corporate interests and properties in various cities,

Frank W. Beer and William G. Christy, of Phoenix, for appellants.

Snell, Wilmer, Walsh & Melczer, of Phoenix, for appellees.

DE CONCINI, Justice.

In 1927, August Heckscher became interested in the Westward Ho Hotel in Phoenix, Arizona, by loaning $275,000.00 to

and a resident manager in Phoenix, Arizona, he directed the affairs of the corporation. One and one half (1½) months after his death, his wife took over the presidency and the directorship and managed the corporation in the same manner. On July 10, 1941, Mrs. Heckscher died. Both estates were probated in New York. After litigation in New York between the two estates, the stock was transferred to the executor of the estate of Virginia Heckscher by order of the Surrogate Court. George Thompson, executor of her estate, sold the stock to the purchasers of the Hotel in December of 1943. The said purchasers also paid the indebtedness of the company owed to August Heckscher, to Arthur Smadbeck, executor of his estate.

The Estate Tax Collector of the State of Arizona claimed that both estates must pay a tax upon the transfer of the shares of stock in the Arizona corporation and the transfer of the debt of the Arizona corporation owing to decedent August Heckscher. The executors of both estates brought separate actions against the state treasurer, and the estate tax collector seeking declaratory judgments to ascertain whether or not the estates were liable for estate taxes under the Estate Tax Act of 1937 and amendments, being Chapter 40, Article 1, A.C.A.1939. The cases were consolidated for trial, judgment was entered in favor of the plaintiffs and they are both here on appeal. The plaintiffs executed a bond of $50,000.00 in favor of the State of Arizona for payment of any tax due by said estates pending the outcome of this appeal.

Appellants raise several questions on this appeal. The first concerns the right of the appellees to maintain these declaratory judgment actions against the Estate Tax Collector. The appellants claim a declaratory judgment action does not lie here because an exclusive remedy for settling these disputes has been set up in the Estate Tax Act. It is true that section 40-118, A.C.A.1939, provides a method for objecting to a determination by the Estate Tax Commissioner of the amount of the tax. However appellees here are interested only in finding out whether or not the commissioner has the power to require them to file an estate tax return. This determination involves the jurisdiction or power which the commissioner possesses under the act. Under these circumstances actions seeking a declaratory judgment are proper. Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So.2d 479.

The appellants further contend that the state and not the Estate Tax Collector is the proper party defendant and consequently this being in reality a suit against the state, it cannot be maintained since it is a violation of the 11th Amendment to the Federal Constitution which prohibits suits against a state by citizens thereof. This is not a suit against the state because it is alleged that the Estate Tax Collector is acting in excess of his jurisdiction. If he is acting in excess of his jurisdiction, then

his actions are not state actions. Therefore this is not a suit against the state, and a suit against the collector will lie. California Physicians' Service v. Garrison, Cal.App., 155 P.2d 885.

The next question to be determined is whether the Estate Tax Act as it existed in 1941, at the time of the death of the decedents, provided for taxing intangibles belonging to nonresident decedents. There is no question raised as to the constitutionality of such a statute. The parties hereto agree that such a tax is constitutional. Blackstone v. Miller, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439; Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162; State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436; State Tax Commission of Utah v. Untermyer, 316 U.S. 645, 62 S.Ct. 1104, 86 L.Ed. 1729. We hold that the Estate Tax Act of 1937 as it existed in 1941, did provide for a tax upon the said intangibles involved in this action, namely, the shares of stock owned by the Virginia Heckscher estate in the Westward Ho Hotel Company and the promissory notes of the said company, secured by mortgages on its property, owned by the August Heckscher estate.

We believe it advisable at this point to indicate that in 1943, the Legislature amended the Estate Tax Act of 1937 so that the instant problem no longer exists. The said amendment provides that intangibles belonging to nonresident decedents shall not be subject to the estate tax. It reads as follows: "40-113. Intangibles of persons not domiciled in state.—(a) Nothing in this act shall be construed as imposing a tax upon any transfer, as defined in this act, of intangibles, however used or held, whether in trust or otherwise, by a person, or by reason of the death of a person, who was not domiciled in this state at the time of his death."

Appellants rely on the following set out sections of Chapter 40, Article 1, A.C.A. 1939, for the basis of their claim that the Estate Tax Act at the time of the death of each decedent in 1941, taxed the said intangibles involved herein. These pertinent sections are as follows:

"40-103. Imposition of tax.—A tax, dedetermined as hereinafter provided, is imposed upon the interest of the net estate of every decedent dying after the date of the taking effect of this act, whether a resident or nonresident of the state."

"40-105. Valuation of gross estates.— The value of the gross estate of a decedent, for the purpose of the tax imposed by this act, shall be determined by including the value at the time of death of all property, real or personal, tangible, or intangible, wherever situated:

"1. To the extent of the interest therein of the decedent at the time of death."

"40-106. Valuation of net estate.
*   *   *   *   *   *

"(c) In the case of a nonresident, the value of the net estate, for the purpose of the tax imposed by this act, shall be determined by deducting from the value of that part of the gross estate which at the time of death is situated in this state that proportion of the deductions specified in subsection (a) which the value of such part bears to the value of the entire gross estate, wherever situated.

\*    \*    \*    \*    \*    \*

° "(e) No deduction or exemption shall be allowed in the case of a nonresident unless the executor or other representative includes in the return required to be filed the value at the time of death of that part of the gross estate not situated in this state."

"40-113. Transfer by foreign fiduciary. —(a) Whenever any foreign executor, administrator or trustee shall assign or transfer any stock or bonds in this state standing in the name of the decedent or in trust for a decedent, which shall be liable for the said tax, such tax shall be paid on the transfer thereof; otherwise the corporation permitting the transfer shall become liable therefor.

"(b) The commissioner shall have authority to make appraisal of any such stocks or bonds, and to determine the taxes due. The tax shall be computed as provided herein, and receipt or waiver issued by the commissioner shall be complete protection to any such corporation for the transfer of such stocks or bonds."

"40-128. Scope of statute.—The provisions of this act shall apply to all property of an estate, real, personal and mixed, and to both tangible and intangible assets of the estate, which shall be subject to the jurisdiction of the state for estate tax purposes."

It is a well-known rule of statutory construction that in construing legislation our paramount interest is in ascertaining the intent of the Legislature from the language used therein. Webb v. Frohmiller, 52 Ariz. 128, 79 P.2d 510; Miners & Merchants Bank v. Board of Sup'rs of Cochise County, 55 Ariz. 357, 101 P.2d 461. All devices and rules of statutory construction are directed toward ascertaining the legislative intent. In construing an act we should give effect to all portions thereof that are pertinent. Wise v. First National Bank, 49 Ariz. 146, 65 P.2d 1154. Statutes will be given a reasonable interpretation which will render them valid and operative rather than one which would defeat them. Hill v. Gila County, 56 Ariz. 317, 107 P.2d 377; Rose v. State, Cal., 105 P.2d 302.

Appellees contend that section 40-105, supra, does not operate to tax intangibles belonging to nonresident decedents because it is concerned only with a "Valuation of gross estates." The tax exacted by our Estate Tax Act is a tax solely upon the net estate. Therefore, that portion of section 40-106, above quoted, is the controlling provision because it sets out the procedure

for determining the net estate. When calculating the tax on a net estate only "that part of the gross estate which at the time of death is situated in this state," is subject to its imposition. Appellees reason that stocks and secured promissory notes of a domestic corporation, being intangibles, are not property "situated in this state," but have their situs only at the domicile of the owner. Appellees arrive at such a conclusion by relying on the maxim of *mobilia sequuntur personam* to determine the situs of intangibles for purposes of taxation. The basis for this reasoning is the feeling that intangibles must be treated in the same manner as tangibles, that is, at one time they may have a situs or location only at one place. This is fallacious because it ignores the fact that tangibles have a physical location whereas intangibles and choses in action exist only in contemplation of law, therefore, giving them a situs is a mere fiction.

The early cases adopted the fiction of situs or location of intangibles for use in determining conflict of laws problems. This concept of situs was then applied to problems of taxation so that in order to justify taxation, the property, tangible or otherwise, had to have a situs in the taxing jurisdiction. The decision of the United States Supreme Court in the case of Curry v. McCanless, 1939, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162, returned to the Blackstone v. Miller, 1903, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439, doctrine that intangibles may have a taxable situs in more than one state. With the decision in the case of State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436, extending the implication and scope of Curry v. McCanless, supra, it became obvious that the United States Supreme Court began taking the more realistic view in respect to intangibles in that the right of states to tax depends not on the fictional theory of situs but on the fact that the intangibles are within the power and receive the protection of the taxing state.

In the absence of some statute regulating the situs of property for taxation, the taxable situs is still controlled by common-law notions, and in the case of intangibles the maxim *mobilia sequuntur personam* still prevails. It is, however, within the jurisdiction of the Legislature which has the power and protection over the intangibles, to give the said intangibles any situs it sees fit for purposes of taxation. Brophy v. Powell, 58 Ariz. 543, 121 P.2d 647. The right to tax exists in the state because the owner of intangibles needs the aid of the state, its laws and its courts to acquire and enforce his rights to his property. The state may demand a quid pro quo in return for its functions. The term "situs", in the case of intangibles, now signifies power or jurisdiction over same rather than its old connotation of location.

378

Having decided the state has the power to tax these intangibles, the next step is to determine whether the Arizona Estate Tax Act as it existed in 1941 makes the said stock in the Westward Ho Hotel Company and the debt owed by the company, evidenced by its promissory notes and secured by mortgages upon the company property, liable for the taxes herein disputed. We must ascertain whether the Legislature in enacting the said Estate Tax Act and its amendments intended to tax these items. First we shall determine whether the stock of the Arizona corporation owned by decedent Virginia Heckscher was taxed under the statute. The provisions of sections 40-106, 40-128, 40-113 and 40-103, supra, considered together indicate to us that the Legislature in enacting section 40-106, supra, intended that the phrase, "that part of the gross estate which at the time of death is situated in this state," includes stock of a domestic corporation. Section 40-128, supra, refers to property, "subject to the jurisdiction of the state." Other jurisdictions have held that by the use of that phrase, the Legislature intended to tax transfers of stock of a domestic corporation owned by nonresident decedents. Untermyer v. State Tax Commission, 102 Utah 214, 129 P.2d 881. Section 40-113, supra, could only be operative if the act does tax the said stock. This section considered with the rest of the act reveals that the Legislature intended to so tax the transfer of corporate shares of domestic corporations owned by nonresident decedents. However, we hold that even though we disregard section 40-113, supra, the remaining provisions of the act are broad enough to tax the transfer of stock in a domestic corporation. As before mentioned, in the absence of legislative intent to the contrary we will construe an act so as to give validity to all its provisions. The presumption is that the Legislature did not intend to do a futile thing by including a provision which is nonoperative or invalid. Section 40-103, supra, indicates the legislative intent to tax all properties within the state's jurisdiction.

Next we must decide whether under the act the Legislature intended to tax the transfer of a debt owed by a domestic corporation evidenced by promissory notes and secured by mortgages upon the corporate property. Under our statutory provisions there is no reason for treating this differently than stock for they are both intangible personalty and choses in action. If the Legislature intended to tax the transfer of corporate stock by virtue of sections 40-103, 40-106 and 40-128 as well as 40-113, supra, it is only reasonable that the provisions of the Estate Tax Act are broad enough to tax the transfer of the said debts owed by the Arizona corporation. We hold that the provisions of sections 40-103, 40-106, and 40-128, supra, contemplate the taxation of every type of intangible within the jurisdiction of the State of Arizona.

The case of In re Lloyd's Estate, 185 Wash. 61, 52 P.2d 1269, is very much in point here. Under statutory provisions similar to ours, the Supreme Court of the State of Washington held that a bank deposit in a Washington bank, of a nonresident decedent, was subject to the Washington estate tax. The Washington Court reasoned that a bank deposit is a debt, a chose in action; that debts are subject to garnishment in the state and, likewise, are protected by the laws of the state. Hence they are according to the language of the Washington statute, Rem.Rev.Stat. § 11201, "within the jurisdiction of this state." It is interesting to note that this case was decided between the rendition of the opinions in the case of Blackstone v. Miller, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439, in the year 1903, and the case of State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436, in the year 1942. During this period the United States Supreme Court reversed the Blackstone case and held that the states had no power to tax intangibles belonging to nonresident decedents. Farmers Loan & Trust Co. v. Minnesota, 1930, 280 U.S. 204, 50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000; First National Bank of Boston v. Maine, 1932, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401. One of the reasons the United States Supreme Court gave for those latter decisions was that such a tax promoted ill feeling and poor relations between sister states. During that time and in spite of such a holding, the Lloyd case held such a tax was constitutional because the fiction of relations with a sister state was not involved. In the Lloyd case, supra, the bank deposit in Seattle, Washington, was owned by a nonresident decedent who was domiciled in Canada. The Lloyd case was and is good law.

Appellants also contend that the gift of the shares of stock in the Westward Ho Hotel Company was made by the said August Heckscher in contemplation of death and that therefore they should also be taxed to the August Heckscher estate. The record reveals no such situation. There is no evidence showing that the gift of the stock was made in contemplation of death.

Appellants also claim that the corporate entity should be disregarded in this case. There is no basis for this claim. The record is devoid of any grounds for the disregarding of the corporate entity of the Westward Ho Hotel Company.

The power of the state being undisputed and the Legislature having declared its intention to assert that power with respect to property over which it had jurisdiction, we must give effect to the legislative intent so expressed by holding that the property involved herein was at the time of the death of each decedent subject to the estate tax.

Judgment reversed.

LA PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concurring.