394 P.2d 141

BESSER COMPANY; a corporation,
Plaintiff-Appellant,

v.

The BUREAU OF REVENUE of the State of
New Mexico and Robert Valdez, Commis-
sioner thereof, Defendants-Appellees.

No. 7425.

Supreme Court of New Mexico.

July 20, 1964.

**378**

Jethro S. Vaught, Jr., Joseph R. Mc-Neany, Albuquerque, for appellant.

Earl E. Hartley, Atty. Gen., Norman S. Thayer, Asst. Atty. Gen., for appellees.

MOISE, Justice.

Plaintiff-appellant, having paid taxes claimed by defendant-appellee under New Mexico Emergency School Tax Act (§§ 72–16–1 to 72–16–47, N.M.S.A.1953), under protest, brought this action to recover the amounts paid.

The parties stipulated as follows:

"1. That Plaintiff is a corporation organized under the laws of the State of Michigan with its principal place of business situate at Alpena, Michigan;

"2. That Plaintiff-Corporation is qualified as a foreign corporation to do business in the State of New Mexico under the statutes and rules of the New Mexico State Corporation Commission;

"3. That Plaintiff at no time material hereto has maintained an office for regular employees located or resident within the State of New Mexico;

"4. That Plaintiff does not maintain nor has it at any time maintained any traveling agents or salesmen regularly devoted to the solicitation of any business in the State of New Mexico;

"5. That Plaintiff does not manufacture any of its products within the State of New Mexico;

"6. That Plaintiff at its principal place of business in Alpena, Michigan, manufactures certain machinery and equipment which it sells or leases to producers of concrete products, in all the states of the union and in foreign countries;

"7. That all contracts for the use or sale of Plaintiff's products are made and accepted only at its offices within the State of Michigan;

"8. Plaintiff, at its home in the State of Michigan, has heretofore entered into the rental and use agreements, true and correct copies of which are attached to the complaint herein as exhibits A and B;

"9. That in addition to the aforesaid agreements, exhibits A and B, Plaintiff has only two other like agreements effective with persons located within the State of New Mexico, which agreements are not sale agreements but only rental or use agreements;

"10. That under and by virtue of the aforesaid agreements, the title to all machinery and equipment remains at all times vested in Plaintiff, and no provision is included for transfer of title from Plaintiff;

"11. That all receipts by Plaintiff under said agreements for the rental or use of said equipment are specifically designated in said agreements as payments for the use only of such equipment which payments are regularly remitted monthly by such contract-user in New Mexico, to the Plaintiff at its principal office in the State of Michigan;

"12. That by provision of said agreement, upon the termination thereof, the machinery and equipment is returnable to Plaintiff freight prepaid to its principal office in the State of Michigan;

"13. That the basis for monthly rental of said machinery and equipment is a fixed rate per unit produced by such machinery fixed upon a fiscal year basis for production beginning April 1st of each year and ending March 31st of the succeeding year;

"14. That on or about July 13, 1959, Defendant served notice upon Plaintiff that it had determined that Plaintiff's receipts from New Mexico users of its machinery and equipment were subject to the school tax statutes of the State of New Mexico and Defendant has not asserted that said receipts are subject to any New Mexico statute other than the New Mexico School Tax Statutes;

"15. That on or about March 9, 1960, under receipt No. 97306, Plaintiff paid to Defendant the sum of $1,205.09 for the period November, 1958, through February, 1960, specifically as 'school tax' under protest that

"(a) Plaintiff is not subject to the provisions of the New Mexico School Tax Law, Sections 72–16–1 to 72–16–47, inclusive, N.M.S.A., 1953;

"(b) That Plaintiff is not and was not engaged in business in the State of New Mexico within the provisions of the aforesaid statutory sections;

"(c) That the business relationship established by said contracts or agreements is not a sale or other type of contract or agreement, the proceeds of which result in any tax due the State of New Mexico under the provisions of the aforesaid statutes;

"(d) That said business relationship, contracts and agreements are made, consummated and arise in the State of Michigan;

"(e) That Plaintiff is engaged solely in interstate commerce and is not engaged in intrastate commerce and, hence, the State of New Mexico is without authority to impose the claimed tax in violation of Article I, Section 8 of the Constitution of the United States;

"16. That Plaintiff has filed this action in the manner and within the time allowed by statute of the State of New Mexico and rules and regulations of the New Mexico Bureau of Revenue."

Thereafter, the court entered its decision, concluding that under the facts the tax paid under protest was properly assessed and was due and payable; whereupon, a judgment was entered dismissing plaintiff's complaint.

This appeal has been perfected, and by its brief filed in this court, although stated in somewhat different terms, the plaintiff presents argument generally in support of its grounds of protest specified in stipulation 15, quoted above.

Inasmuch as defendant states that the tax was imposed pursuant to § 72–16–4.5, N.M.S.A.1953, and under no other provision of our law, it is not necessary for us to consider plaintiff's arguments that taxes imposed by other sections would not apply to it. Our task is to ascertain if plaintiff's operations are included within § 72–16–4.5, supra, and the definitions of § 72–16–2(F), (G), (H) and (I), and not exempt under § 72–16–12. If it is concluded that the tax was properly imposed pursuant to the provisions mentioned, we must also consider plaintiff's claim that the tax would constitute an undue burden on interstate commerce in violation of Art. I, § 8, U. S. Constitution, and a violation of the due process clause of the 14th Amendment to the U. S. Constitution.

For convenience, we here set forth the pertinent parts of the sections mentioned above:

"72–16–4.5. The tax shall be computed at an amount equal to two per cent [2%] of the gross receipts of the business of every person engaging or continuing in the business of selling at retail of goods, wares, materials, equipment, machinery and commodities, including airplane parts and equipment, alcohol and all alcoholic liquors and beverages for consumption and

not for resale and *including receipts from rentals or leasing of tangible personal property * * *."* (Emphasis supplied.)

"72–16–2. When used in the Emergency School Tax [Act] as amended [72–16–1 to 72–16–47] * * *

"F. 'Business' includes all activities or acts engaged in, personal, professional, and corporate, or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect;

"G. 'Engaging,' when used with reference to engaging or continuing in a business or profession, includes the exercise of corporate or franchise power, but *it does not include occasional and isolated sales, or transactions by a person who does not hold himself out as engaged in business*; (Emphasis supplied.)

"H. 'Retail' means, except as herein otherwise provided, the sale of tangible personal property for consumption and not for resale in the form of tangible personal property, and 're-tailer' means every person engaged in the business of making sales at retail;

"I. 'Consumption' means any use of tangible personal property, goods, wares and merchandise in such a manner that the same shall never again enter trade channels as a commodity or article of merchandise; and 'consumer' means any person buying tangible personal property, goods, wares and merchandise for use in such a manner that the same shall not thereafter enter trade channels as a commodity or article of merchandise for sale, and shall include persons, firms and corporations engaged in the business of contracting as contemplated by section 7 (72–16–4.7) of this 1959 act."

We do not copy § 72–16–12, N.M.S.A. 1953, because a casual reading of it discloses that it provides an additional tax and exemption therefrom as against persons taxable under sections other than § 72–16–4.5, supra. In view of defendant's statement that taxes are being claimed under § 72–16–4.5, supra, and no other provision, this section is not applicable.

■ Concerning the correct rule to be applied by us in construing taxing or revenue acts, there can be little question. They should be strictly construed to the extent that they provide that a citizen's property is being taken in a summary proceeding, or penalties or forfeitures imposed on him, but in other respects should be given a fair, unbiased and reasonable construction, without favor either to the taxpayer or the state, to the end that the legislative intent is effectuated and the public interests to be subserved thereby furthered. Southern Pac. Ry. Co. v. State, 34 N.M. 479,

284 P. 117; Amarillo-Pecos Valley Truck Lines, Inc. v. Gallegos, 44 N.M. 120, 99 P.2d 447; Beatty v. City of Santa Fe, 57 N.M. 759, 263 P.2d 697.

It is apparent that plaintiff's principal complaint under its first point results from the fact that § 72–16–4.5, supra, is entitled *"Privilege Taxes—Retailers,"* and then states that the tax shall be computed on the basis of 2% of the gross receipts of the business of selling goods, wares, etc., at retail and for consumption and not for resale. It is asserted that plaintiff is in no sense a retailer.

■ We would first point out that the heading or head notes contribute nothing so far as an effective legislative enactment is concerned. See State v. Mares, 61 N.M. 46, 294 P.2d 284.

Also, it must be conceded, we believe, that plaintiff is not a "retailer" as that term is generally used and understood, or as broadly defined in § 72–16–2(H), supra. We had occasion, in Albuquerque Lumber Co. v. Bureau of Revenue of New Mexico, 42 N.M. 58, 75 P.2d 334, to consider whether a dealer in plumbing fixtures who sold to plumbing contractors for installation in structures for others was a "retailer." It was there stated that, "It is a familiar rule of statutory construction that in the absence of anything in the context to the contrary, common or popular words are to be understood in a popular sense." On

this basis it was determined that "sale" as used in the Emergency School Tax Act was used in its usual and popular sense. It was further concluded that the sales in question were sales at retail under the definition of "retail" above set forth, and being "for consumption and not for resale in the form of tangible personal property, * * *" and properly taxed.

■ The situation here differs from that discussed above. First, we note that the definition of "retail" applies "except as herein otherwise provided," and second, § 72–16–4.5, supra, imposes its tax on "the gross receipts of the business * * * of selling at retail * * * including receipts from rentals or leasing of tangible personal property * * *." Plaintiff is in the business of renting tangible personal property, and there can be no question that it was the legislative intent that the receipts therefrom be taxed at the same rate as sales at retail, viz., 2% of the gross receipts therefrom. We are satisfied that this is the correct interpretation under the rules of construction noted above.

In our view of the law, the definition of "consumption" contained in § 72–16–2(I), supra, is of no assistance to plaintiff since as already noted the tax is imposed on the gross receipts from rentals or leasing of tangible personal property, which is totally apart from the tax also imposed in the same section on "sales for consumption and not

for resale" and included in the definition of "retail."

We still must decide if plaintiff's operations constituted "engaging" in the business to which the tax attached, because "occasional and isolated sales, or transactions by a person who does not hold himself out as engaged in business" are excluded under the definitions in § 72–16–2(G), supra.

Webster's New International Dictionary (3rd Ed.) includes a definition of "occasional" as "met with, appearing or occurring irregularly and according to no fixed or certain scheme"; and defines "isolated" as "unique; occurring alone or once; sporadic, not likely to recur."

■■ As we interpret the language of § 72–16–2(G), the number of transactions entered into is not necessarily controlling. The real question is whether the sale or lease is in line with the business for which the seller or lessor was organized and in which it engages. It has no application where, as here, plaintiff is in the business of leasing machinery to anyone who needs and wants it. The fact that there are only four block manufacturers who are customers of plaintiff does not make the transactions "occasional" or "isolated" and a conclusion that plaintiff is not "engaging" in business does not follow. On the contrary, plaintiff was doing exactly what it was organized and authorized to do, and as often as business conditions and circumstances demand-ed. It was "engaging" in business. Compare Northwestern Pac. Ry. Co. v. State Board of Equalization of State of California, 21 Cal.2d 524, 133 P.2d 400; Pacific Pipeline Construction Company v. State Board of Equalization, 49 Cal.2d 729, 321 P.2d 729; Martin v. United States (C.C.A. 10), 100 F.2d 490; State Farm Mut. Automobile Ins. Co. v. Brooks (C.C.A. 8), 136 F.2d 807; Bankers & Shippers Ins. Co. of New York v. Blackwell, 260 Ala. 463, 71 So.2d 267; Nelson v. State (Ct.Crim.App. Okl.), 355 P.2d 413.

There remains for us to consider plaintiff's arguments that the tax imposed by defendant is invalid as an undue burden on interstate commerce and that it denies plaintiff due process of law. We do not consider that either position has any merit.

We first notice Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944, a decision affirming this court's decision in the same case appearing at 41 N.M. 288, 67 P.2d 505. We quote the following from the opinion of Mr. Justice Stone:

"That the mere formation of a contract between persons in different states is not within the protection of the commerce clause, at least in the absence of Congressional action, unless the performance is within its protection, is a proposition no longer open to question. * * * Nor is taxation of a local busi-

ness or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business. Williams v. Fears, 179 U.S. 270, 21 S.Ct. 128, 45 L.Ed. 186; Ware & Leland [Co.] v. Mobile County [209 U.S. 405, 28 S.Ct. 526, 52 L.Ed. 855, 14 Ann.Cas. 1031], supra; Browning v. Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828; General Railway Signal Co. v. Virginia, 246 U.S. 500, 510, 38 S.Ct. 360, 62 L.Ed. 854 [858]; Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038. * * *.

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way.' Postal Telegraph-Cable Co. v. Richmond, 249 U.S. 252, 259, 39 S.Ct. 265, 266, 63 L.Ed. 590 [594]; Ficklen v. Shelby County Taxing District, 145 U.S. 1, 24, 12 S.Ct. 810, 36 L.Ed. 601 [607], [4 Inters.Com.Rep. 79]; Postal Telegraph Cable Co. v. Adams, 155 U.S. 688, 696, 15 S.Ct. 268, 360, 39 L.Ed. 311 [316, 5 Inters.Com. Rep. 1]; Galveston, H. & S. A. R. Co.

v. Texas, 210 U.S. 217, 225, 227, 28 S.Ct. 638, 52 L.Ed. 1031 [1036, 1037], and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business. He is subject to a property tax on the instruments employed in the commerce, Western Union Telegraph Co. v. Massachusetts, 125 U.S. 530, 8 S.Ct. 961, 31 L.Ed. 790; Cleveland, C., C. & St. L. R. Co. v. Backus, 154 U.S. 439, 14 S.Ct. 1122, 38 L.Ed. 1041 [4 Inters.Com.Rep. 677]; Adams Express Co. v. Ohio State Auditor, 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683; Adams Express Co. v. Kentucky, 166 U.S. 171, 17 S.Ct. 527, 41 L.Ed. 960; Western Union Tel. Co. v. Missouri ex rel. Gottlieb, 190 U.S. 412, 23 S.Ct. 730, 47 L.Ed. 1116; Old Dominion S. S. Co. v. Virginia, 198 U.S. 299, 25 S.Ct. 686, 49 L.Ed. 1059 [3 Ann.Cas. 1100]; and if the property devoted to interstate transportation is used both within and without the state, a tax fairly apportioned to its use within the state will be sustained, Pullman's Palace-Car Co. v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 [3 Inters.Com.Rep. 595]; Cudahy Packing Co. v. Minnesota, 246 U.S. 450, 38 S.Ct. 373, 62 L.Ed. 827. Net earnings from interstate commerce are subject to income tax, United States

Glue Co. v. Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed 1135, Ann.Cas. 1918E, 748, and, if the commerce is carried on by a corporation, a franchise tax may be imposed, measured by the net income from business done within the state, including such portion of the income derived from interstate commerce as may be justly attributable to business done within the state by a fair method of apportionment. Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165. Cf. Bass, Ratcliff & Gretton, Ltd. v. State Tax Commission, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282."

 In that case, the court concluded that the tax was "in form and substance, an excise conditioned on the carrying on of a local business * * *." Similarly, the tax here imposed is conditioned on the local business of renting equipment located in this state. It is not a tax on the importation of the equipment; neither is it a tax measured by income on the equipment operated in any other state; nor is the tax different from that assessed and paid by local concerns renting equipment for use by others in this state. Under the authority of Western Live Stock v. Bureau of Revenue, supra, it would seem clear that the tax does not constitute an undue burden on interstate commerce, but on the contrary is a tax on plaintiff's

local and intrastate business of leasing machinery.

Our attention has been directed to the case of Stone v. Stapling Machines Co., 220 Miss. 470, 71 So.2d 205; Appeal dismissed, 348 U.S. 802, 75 S.Ct. 31, 99 L.Ed. 633, a case closely similar to our own on its facts. It was there held that a 2% sales tax on the gross income from the rentals for machines owned by the taxpayer, a Delaware corporation, with its place of business in New Jersey, which machines were located in Mississippi did not constitute an unconstitional burden on interstate commerce. We quote from that case:

"Where the situs of the intangibles is confined to the domicile of the owner, they are of course taxed at his domicile. 'But when the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains, and the rule is not even a workable substitute for the reasons which may exist in any particular case to support the constitutional power of each state concerned to tax.' Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 906, 83 L.Ed. 1339. See also Kelly v. Bastedo, 70

Ariz. 371, 220 P.2d 1069; State v. Atlantic Oil Producing Co., 174 Okl. 61, 49 P.2d 534; Grieves v. State, ex rel. County Attorney, 168 Okl. 642, 35 P.2d 454.

"When the machines came to rest in this state for the purpose of manufacturing patented and unpatented boxes, the use or rent thereof became localized, and they left the stream of interstate commerce. In McGoldrick v. Berwind-White Coal Min. Co., 309 U.S. 33, 60 S.Ct. 388, 392, 84 L.Ed. 565, the Court said: 'But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business, Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823 [826], 115 A.L.R. 944. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress.'"

Plaintiff's efforts to distinguish that case, in our view, are entirely futile.

Plaintiff cites numerous decisions of the Supreme Court of the United States, and particularly relies on Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660, and McLeod v. J. E. Dilworth Company, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304. We have examined them all, and do not consider that they in any sense support plaintiff's position. Concerning the two cases specifically mentioned, it should be sufficient to distinguish them, to point out that both involved attempts at collection of a use tax on a foreign sale from the nonresident vendor. The tax here being considered is one imposed on the gross receipts from the rentals from the machines located in New Mexico.

A word about the due process argument. In Wisconsin v. J. C. Penney Company, 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229, a case involving the constitutionality of a statute imposing an excise tax upon the privilege of declaring and receiving dividends derived from property located and business transacted within the state, as applied to a foreign corporation, Justice Frankfurter speaking for the court stated the test of due process in the following language:

"* * * That test is whether property was taken without due process of

law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders. * * *"

Under the facts of the instant case, with plaintiff's property situated in New Mexico and earning rentals which are paid to plaintiff, that "Protection, opportunities and benefits" from the state have been enjoyed by plaintiff is manifest. The tax paid by plaintiff and here sought to be returned is an entirely proper and reasonable exaction in return for that "protection" and those "opportunities" and "benefits." Compare, Stone v. Stapling Machines Co., supra.

For the reasons stated the judgment of the trial court should be affirmed. It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.