POSTAL TELEGRAPH-CABLE COMPANY *v.* CITY OF RICHMOND.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

No. 169. Argued January 22, 1919.—Decided March 17, 1919.

The City of Richmond is authorized by its charter and the statutes of Virginia to impose an occupation or license tax on the business of a telegraph company done within the city. P. 257.

Under its police power, a State may impose a license tax upon a telegraph company, which has accepted the Act of Congress of July 24, 1866, and is doing both an interstate and a local business, provided the tax is restricted in terms to the local business and does not in effect burden or discriminate against the interstate business. *Id.*

Where a State requires a telegraph company to engage in intrastate business, and taxes that business more than the amount of the net receipts therefrom, so that payment, if compelled, must come in part from receipts from interstate business, *semble,* that the tax must

be declared invalid; but only if the incidence on interstate commerce is shown by clear and convincing evidence. P. 258.

A telegraph company although it has accepted the Act of 1866, and is engaged in interstate commerce, may be charged by a city a reasonable amount upon each ·pole maintained and used in the city streets, both as compensation for such use, in the nature of rental, and to cover the expense entailed on the city by the presence of the poles and wires and the liabilities and duties arising therefrom. *Id.*

Such a tax, if reasonable in amount, is not necessarily objectionable because it exceeds the net returns from local business and must be paid from interstate earnings. P. 259.

Affirmed.

THE case is stated in the opinion.

*Mr. John N. Sebrell, Jr.,* for appellant:

The license tax while, in terms, restricted to business done within the State, is, in fact, a tax upon the company's interstate business. This becomes so because the *intrastate* business at Richmond is so small, that the net receipts therefrom are insufficient to pay the tax, and the payment if compelled, must come from the other business of the company, namely, its interstate business, since the laws of Virginia require it to accept such intrastate business. This fact was established by the allegations and proofs and stood unchallenged. In the case of the telegraph business (unlike the railroad business, where conditions as to different classes of freight and service are so diverse,) the most equitable method of determining the proper proportion of the expenses incurred in and properly chargeable to intrastate business and interstate business, is to divide the expense according to the ratio which exists between the interstate and intrastate receipts. Distinguishing *Wood* v. *Vandalia R. R. Co.,* 231 U. S. 1, and *Simpson* v. *Shepard,* 230 U. S. 352.

As to the license tax, therefore, the case falls clearly within *Pullman Company* v. *Adams,* 189 U. S. 420, since there is no doubt that the company was required to do

local business by the laws of Virginia. *Umstadter* v. *Postal Telegraph-Cable Co.*, 103 Virginia, 742; *Western Union Telegraph Co.* v. *Reynolds*, 100 Virginia, 459. See also, *Postal Telegraph-Cable Co.* v. *Cordele*, 141 Georgia; 658; *Postal Telegraph-Cable Co.* v. *Norfolk*, 118 Virginia, 455; *Postal Telegraph-Cable Co.* v. *Charleston*, 153 U. S. 692; *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, *Lyng* v. *Michigan*, 135 U. S. 161, 166; *Norfolk &c., R. R. Co.* v. *Pennsylvania*, 136 U. S. 114, 118; *Leloup* v. *Mobile*, 127 U. S. 641.

The tax on poles also is unjust, excessive, unreasonable, and void—far in excess of any expense to which the city is put for inspection and superintendence.

This court has held in a line of decisions that, where a municipality has no ownership in the streets which authorizes a rental, the only power for license fee exactions upon the instrumentalities of interstate commerce is derived from the police power. *Postal Telegraph-Cable Co.* v. *Taylor*, 192 U. S. 64; *Postal Telegraph-Cable Co.* v. *New Hope*, 192 U. S. 55; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia*, 190 U. S. 160.

The City of Richmond has no property right of any kind in the streets, the easement of passage therein being in the State and the fee in the abutting owners. Code of Virginia, 1887, § 1038, 1287; *Essex* v. *New England Telegraph Co.*, 239 U. S. 313; *Richmond* v. *Smith*, 101 Virginia, 161.

It results, therefore, that the city, being without property rights in the streets, can impose only such tax as is authorized by its police power, and, therefore, this case falls under the influence of *Postal Telegraph-Cable Co.* v. *Taylor*, 192 U. S. 64, and not under *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92.

It appears from the record that there is no special inspection or supervision of the poles except by the regularly employed officers of the city with little or no ad-

ditional expense, and that the license fees exacted from the company are greatly in excess of any amount necessary for police inspection or supervision. In fact, this does not seem to be seriously controverted in the case.

That such taxes are invalid, see Dillon, Municipal Corporations, 5th ed., vol. II, pp. 599, 665; *Kitanning Borough* v. *American Natural Gas Co.*, 239 Pa. St. 210; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia*, 190 U. S. 160, 164, 167; *Postal Telegraph-Cable Co.* v. *Taylor*, 192 U. S. 64, 72; *Philadelphia* v. *Western Union Telegraph Co.*, 40 Fed. Rep. 615; *Sunset Telephone Co.* v. *Medford*, 115 Fed. Rep. 202; *Saginaw* v. *Swift*, 113 Michigan, 660; *Atlantic Postal* v. *Savannah*, 133 Georgia, 66, 71; *Foote & Co.* v. *Maryland*, 232 U. S. 494.

The right to use the streets for the erection of poles was granted directly by the State by § 1287 of the Code, supplemented by the ordinance of the city, and the grants there made when accepted and performed by the company constituted a contract, the obligation of which was impaired by the pole-tax ordinance. *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58; *Boise Water Co.* v. *Boise City*, 230 U. S. 84; *Louisville* v. *Cumberland Telephone Co.*, 224 U. S. 663. The power reserved "to put other and additional restrictions and regulations upon the erection or use of said poles and wires by said company, and to require at any time by ordinance or resolution, that the use or erection of said poles and wires shall cease," is no more than a reservation of the police control of the streets, *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 60, 72; and could not affect the nature of the grant coming direct from the State. *Grand Trunk Western Ry. Co.* v. *South Bend*, 227 U. S. 544.

Counsel also discussed certain questions of *stare decisis*, acquiescence and *res judicata*.

*Mr. H. R. Pollard* for appellee.

MR. JUSTICE CLARKE delivered the opinion of the court.

The appellant, the Telegraph Company, in its bill filed in the District Court of the United States for the Eastern District of Virginia, sought to enjoin the City of Richmond and its officers from collecting an annual license tax of $300 imposed upon the company by ordinance "for the privilege of doing business within the City of Richmond, but not including any business done to or from points without the State, and not including any business done for the Government of the United States, its officers or agents," and also from attempting to collect an annual fee of $2, imposed by another ordinance, for each telegraph pole which the company maintained or used in the streets of the city.

The allegations of the voluminous bill essential to be considered are: That the company accepted the Act of Congress of July 24, 1866, entitled, "An Act to aid in the Construction of Telegraph Lines," etc., [c. 230, 14 Stat. 221], and is engaged in transmitting messages by telegraph, intrastate and interstate,—this is admitted; and the following which are denied, viz., that the cost of doing the intrastate business transacted by the company at Richmond is greater than the receipts from it and that since both taxes must be paid, if at all, from receipts from interstate commerce they constitute such a burden upon that commerce of the company as to render them unconstitutional and void.

The evidence introduced on the trial was largely in the form of affidavits, together with a transcript of the evidence taken in a former case, which was stipulated into the record.

The District Court held the taxes valid and dismissed the bill. On the constitutional questions involved a direct appeal brings the case into this court for review.

Except for the contention that this record shows affirmatively and clearly that the taxes complained of are necessarily unreasonable and a burden upon interstate commerce, the case could well be disposed of, without discussion, on the authority of decided cases.

That the City of Richmond has authority, under the statutes of Virginia and its charter, to impose an occupation or license tax on the business of the telegraph company done within the city is clear enough. Virginia Code, § 1042; Charter of the City of Richmond, § 67; *Postal Telegraph-Cable Co.* v. *Norfolk*, 101 Virginia, 125; *Postal Telegraph-Cable Co.* v. *Norfolk*, 118 Virginia, 455. Assuming the existence of this power in the city, since interstate and government service are expressly excluded from liability for the license charge, the following cases sustain the validity of the tax. *Postal Telegraph-Cable Co.* v. *Charleston*, 153 U. S. 692; *Emert* v. *Missouri*, 156 U. S. 296; *Kehrer* v. *Stewart*, 197 U. S. 60; *Western Union Telegraph Co.* v. *Richmond*, 224 U. S. 160; *Williams* v. *Talladega*, 226 U. S. 404, 416.

The principle of these cases, and of many others cited in the opinions, is that, as against federal constitutional limitations of power, a State may lawfully impose a license tax, restricted, as it is in this case, to the right to do local business within its borders, where such tax does not burden, or discriminate against, interstate business and where the local business purporting to be taxed, again as in this case, is so substantial in amount that it does not clearly appear that the tax is a disguised attempt to tax interstate commerce. Such a tax is not, as is argued, an inspection measure, limited in amount to the cost of issuing the license or supervising the business, but is an exercise of the police power of the State for revenue purposes, restricted to internal commerce, and therefore within the taxing power of the State. *Postal Telegraph-Cable Co.* v. *Charleston; Williams* v. *Talladega, supra;* and

*Western Union Telegraph Co.* v. *Alabama State Board of Assessment*, 132 U. S. 472, 473.

A statute of Virginia requires all telegraph companies doing business in the State to transmit all messages, state or interstate, which are tendered by other companies or by individuals, upon payment of the usual charges. This requirement that the appellant shall engage in intrastate business, construed with the ordinance imposing the license tax, results, it is argued, in imposing a burden upon its interstate business for the reason that the net receipts from its intrastate business are insufficient to pay the tax and therefore payment, if compelled, must be made from interstate receipts. If the facts were as thus asserted it well might be that this tax would be invalid, *Pullman Co.* v. *Adams*, 189 U. S. 420; *Williams* v. *Talladega*, 226 U. S. 404, 416, 417; but a careful examination of the record fails to convince us that it contains that clear and convincing evidence that the tax thus falls upon interstate commerce which is necessary to justify a finding that the ordinance is unconstitutional and void.

There remains to be considered the fee, as it is called in the ordinance imposing it, of $2 for each pole maintained or used in the streets of the City of Richmond. This character of tax has also been the subject of definite decision by this court and has been sustained where not clearly shown to be a direct burden upon interstate commerce or unreasonable in amount, having regard to the purpose for which it may lawfully be imposed. *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S. 92; *Western Union Telegraph Co.* v. *New Hope*, 187 U. S. 419; *Postal Telegraph-Cable Co.* v. *Baltimore*, 156 U. S. 210; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia*, 190 U. S. 160; *Western Union Telegraph Co.* v. *Richmond*, 224 U. S. 160. These decisions do not conflict with *Postal Telegraph-Cable Co.* v. *New Hope*, 192 U. S. 55, or *Postal Telegraph-Cable Co.* v. *Taylor*, 192 U. S. 64. In the former of these

cases the decision of this court rests upon its conclusion that the jury found the tax unreasonable in amount, and in the latter the ordinance involved was disposed of on exception to the affidavit of defense, admitting the allegations of the bill that no inspection of the poles or wires or supervision of the business of the company had been, or was intended to be, made by the Borough and that if made the cost could not reasonably be one-twentieth of the tax imposed. This showing, taken with other facts in the case, it was held, rendered the charge unreasonable and void.

The decisions cited sustaining this character of tax proceed upon the principle that, although the occupation of its streets by a telegraph company engaged in interstate commerce, which has accepted the Act of Congress of 1866, cannot be denied by a city, yet, since the use of its streets for its poles by such a company is necessarily, in a measure, permanent and exclusive in character, and different in kind and extent from that of the general public, and since such use imposes contingent liabilities upon a city, it is competent for it, in the exercise of its police power, to exact reasonable compensation "in the nature of rental" for the use of its streets, having regard to the duties and responsibilities which such use imposes on the municipality. Even if the net returns from the intrastate business should not equal such tax and it must be paid from interstate earnings, this alone would not be conclusive against its validity. If the method of doing interstate business necessarily imposes duties and liabilities upon a municipality, it may not be charged with the cost of these without just compensation. Even interstate business must pay its way,—in this case for its right of way and the expense to others incident to the use of it. *St. Louis* v. *Western Union Telegraph Co.*, 148 U. S., *supra,* pp. 98, *et seq.; Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160, 163; *St. Louis* v. *Western Union Telegraph Co.,* 149 U. S. 465. Such compensation should

also include the expense of inspection of the poles and wires used, and of such supervision of the business of the company conducted in the streets, as may be reasonably necessary to secure the safety of life and property of the inhabitants and of the users of the streets; but with the authority in the courts, on proper application, to determine whether, under the conditions prevailing in a given case, the charge made is reasonably proportionate to the service to be rendered and the liabilities involved, or whether it is a disguised attempt to impose a burden on interstate commerce. *St. Louis* v. *Western Union Telegraph Co.,* 148 U. S. 92; *St. Louis* v. *Western Union Telegraph Co.,* 149 U. S. 465; *Postal Telegraph-Cable Co.* v. *Baltimore,* 156 U. S. 210; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160, 163; *Western Union Telegraph Co.* v. *Pennsylvania R. R. Co.,* 195 U. S. 540, 566; *Western Union Telegraph Co.* v. *Richmond,* 224 U. S. 160, 169.

These decisions and principles dispose of the "pole tax" before us.

The total amount of this tax was, in 1911, $344, in 1914, $384, and in 1915, owing to the extension of the city limits, it became $666. There is evidence which must be credited, that poles and wires in the streets of a city require official inspection and supervision to secure their being kept in proper position and repair, so that they will not interfere with street traffic and may not, especially in time of storm, become crossed with wires carrying high tension currents and thus cause fires and loss of life and property. There is conflict in the evidence as to the cost to the city of such inspection and regulation, but the amount stated does not seem excessive for the service which should be rendered, and which witnesses for the city testified was rendered, in looking after the many poles of the appellant, part of which, at least, carried many wires. As great or greater charges were sustained in *St. Louis* v. *Western Union Telegraph Co.,* 148 U. S. 92; *Postal*

*Telegraph-Cable Co.* v. *Baltimore,* 156 U. S. 210; *Western Union Telegraph Co.* v. *Richmond,* 224 U. S. 160, 172.

The contention cannot be allowed that the ordinance is shown to be void by a formula, devised by an officer of the appellant and pressed upon our attention, for determining the division of costs and expenses between interstate and intrastate business, which it is claimed shows that the pole tax must be paid wholly from receipts from interstate business.

Regardless of obvious criticisms which might be advanced to this formula and to the inadequacy of the data furnished by the record for testing its validity, the charge imposed upon the company, as we have seen, was so moderate in amount, having regard to the necessary burdens which the poles and wires in the streets must impose upon the city, and is so well within the prior holdings of this court, which we have cited, that it cannot be accepted as a sufficient basis for declaring the ordinance invalid.

There is no disposition on the part of this court to modify in the least the law as it has been stated in many cases, that "neither licenses nor indirect taxation of any kind, nor any system of state regulation, can be imposed upon interstate any more than upon foreign commerce; and that all acts of legislation producing any such result are, to that extent, unconstitutional and void." *Crutcher* v. *Kentucky,* 141 U. S. 47, 62; *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1. But municipal ordinances, which for constitutional inquiry are deemed state laws, will be declared void only where clearly shown to be unconstitutional and this very certainly cannot be said of the ordinances in this case, assailed as they are, upon inadequate evidence and upon purely empirical calculations which we are asked to adopt.

It results that the decree of the District Court must be

*Affirmed.*