**VARNEY AIR LINES, Inc., v. BABCOCK, Atty. Gen. of Idaho, et al.**

No. 1765.

District Court, D. Idaho, S. D.

Nov. 5, 1932.

[1] No opinion filed.

688

McKeen F. Morrow and Richards & Haga, all of Boise, Idaho, and William M. Allen, Eugene C. Luccock, and Todd, Holman & Sprague, all of Seattle, Wash., for plaintiff.

Fred J. Babcock, Atty. Gen., and Sidman I. Barber and Maurice H. Greene, Asst. Attys. Gen., for defendants.

Before WILBUR, Circuit Judge, and BOURQUIN and CAVANAH, District Judges, as a statutory three-judge court.

CAVANAH, District Judge.

This is an action brought by the Varney Air Lines, Inc., an interstate carrier of passengers and property by airplane, to enjoin the defendants, as officers of the state of Idaho, from collecting a tax of 5 cents per gallon on all gasoline purchased outside of the state and thereafter imported by it into the state for use in its airplanes.

The tax is imposed by chapter 172 of Laws 1923 of Idaho as amended, which requires each dealer engaged "in the sale of motor fuels" to pay the tax on all motor fuels sold and/or used by such dealer, and provides: "That in addition to the taxes now provided for by law, each and every dealer * * * who is now engaged or who may hereafter engage * * * in this State, in the sale of motor fuels * * * shall * * * render a statement to the Commissioner of Law Enforcement of the State of Idaho of all motor fuels sold and/or used by him or them in the State of Idaho during the preceding calendar month, and pay a license tax of five cents per gallon on all motor fuels as shown by such statement. * * *" Laws 1923, c. 172, § 2, as amended by Laws 1929 (Ex. Sess.) c. 2, § 1.

The validity of the act as applied to the plaintiff is first assailed upon the ground that it is in contravention of the commerce clause of the Federal Constitution, and, secondly, that only dealers who are engaged in the sale of gasoline are subject to it, and inasmuch as the plaintiff does not engage in the sale of gasoline it does not come within the terms of the act and is not subject to the tax.

The principle now recognized by the Supreme Court is that all restraints by exaction in the form of taxes upon the use of the means and acts necessary to the completion of transportation between the states are invasions of the exclusive power of Congress to regulate commerce between the states. The inquiry then arises: Does the tax here imposed with respect to gasoline used by the plaintiff to propel its airplanes in interstate commerce come within this principle? The fact must not be overlooked that we are here concerned with an excise tax which is not imposed upon the gasoline itself, but upon the "sale and/or use" of gasoline. The state has power to impose a property tax upon such gasoline as is situated within the state, but the plaintiff does not sell gasoline within the state. All that it does is to import it into the state for its own use in propelling its airplanes in interstate commerce. Therefore the tax must fall upon the use of gasoline employed by the plaintiff in propelling its airplanes in such commerce, and when so it falls directly upon the use of one of the means by which commerce is carried on. This question was decided by the Supreme Court in the case of Helson v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 281, 73 L. Ed. 683, where the state of Kentucky imposed a tax with respect to the use of gasoline propelling a facility of interstate commerce and it was there held invalid as a burden upon such commerce. Mr. Justice Sutherland, speaking for the court, said: "The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce. It reasonably cannot be distinguished from a tax for using a locomotive or a car employed in such commerce. A tax laid upon the use of the ferryboat would present an exact parallel.

And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax which falls directly upon the use of one of the means by which commerce is carried on directly burdens that commerce. If a tax cannot be laid by a state upon the interstate transportation of the subjects of commerce, as this Court definitely has held, it is little more than repetition to say that such a tax cannot be laid upon the use of a medium by which such transportation is effected. 'All restraints by exactions in the form of taxes upon such transportation, or upon acts necessary to its completion, are so many invasions of the exclusive power of Congress to regulate that portion of commerce between the States.' Gloucester Ferry Co. v. Pennsylvania, supra, 114 U. S. 214 (5 S. Ct. 826, 833 [29 L. Ed. 158])." The principle of the Helson Case has been reaffirmed by the Supreme Court in Eastern Air Transport v. South Carolina Tax Commission, 285 U. S. 147, 52 S. Ct. 340, 76 L. Ed. 673, where the court makes it clear that while a tax laid upon the sale of gasoline might be sustained although the gasoline is used in interstate commerce, a tax laid directly upon the use of gasoline in interstate commerce transportation cannot be sustained. See, also, Gregg Dyeing Co. v. Query, 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232; U. S. Airways, Inc., v. Shaw (D. C.) 43 F.(2d) 148; Mid-Continent Air Express Corporation v. Lujan (D. C.) 47 F.(2d) 266.

█ But the defendants insist that the particular facts in this case bring it within an exception to the rule announced in Helson v. Kentucky, and other decisions of the Supreme Court, for the reason that the plaintiff uses certain air navigation facilities furnished at the expense of the state, and who may exact contributions to the construction and maintenance of the facility and the safety of the public. The Helson v. Kentucky Case is distinguishable from the present case, for there the state did not furnish any facility to the company to be used in its operation of its boats, while here the state furnishes and maintains such air navigation facilities necessary to be used, and are used, by the plaintiff. There would seem to be no question of the right of the state or owner of a facility used by one, although engaged in interstate commerce, to make a charge upon the person who uses it where the amount of the charge be reasonable and fair as to the amount of the use made of the facility. It does not constitute a burden on interstate commerce. The amount of the charge and method of collection are primarily for de-termination by the state. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Postal Telegraph-Cable Co. v. City of Richmond, 249 U. S. 252, 39 S. Ct. 265, 63 L. Ed. 590. As somewhat parallel to the tax here, the state may levy a tax with respect to the exaction of a gasoline tax as compensation for use of highways by buses and trucks engaged in interstate traffic. Interstate Transient Co., Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953. The tax here is allocated to the purpose of furnishing and maintaining airports and air navigation facilities which the plaintiff uses. Therefore under the facts disclosed by the record and the principle as stated the tax imposed by the act and required to be paid by the plaintiff does not burden interstate commerce.

█ The crucial question, however, involved calls for an interpretation of the act when applied to the plaintiff under the facts in the record. From its terms only those who are engaged in the sale of motor fuel are subject to the tax and it does not apply to or impose such tax upon the gasoline imported by the plaintiff into the state which only uses it in its operations as section 2 thereof provides: "Each and every dealer * * * who is now engaged or who may hereafter engage * * * in this State, in the sale of motor fuels * * * shall * * * render a statement to the Commissioner * * * of all motor fuels sold and/or used by him or them in the State of Idaho * * * and pay a license tax of five cents per gallon. * * * *" Plaintiff urges that although it is a "dealer" as that term is used in the act because it imports gasoline into the state, yet it does not engage in the "sale of motor fuels" required by the act. This construction would seem to be borne out by its language, as there must be eliminated from section 2 which imposes the tax, describing dealers intended to pay the tax, "who may hereafter engage * * * in the sale of motor fuels," before the act would be equally applicable to dealers who sell and use and dealers who may use. That section is not so ambiguous as to require us to resort to other sections of the act in order to arrive at its plain meaning. However, in support of the plain meaning of section 2 attention is directed to section 10 thereof (as amended by Laws 1931, c. 68, § 3), which in effect exempts the plaintiff from the payment of the tax as refunds are restricted to the tax on motor fuels "sold and used," and also section 4 thereof (as amended by Laws 1931, c. 68, § 1), that only taxes on gasoline "sold

for and used" in airplanes shall go into the state aeronautic fund, if the Legislature intended to impose a tax generally upon the use of motor fuels.

In view of our conclusion as to the construction thus placed upon the act and the effect given to it as applied to the plaintiff under the facts in this case, the application of plaintiff for an interlocutory injunction is granted, and as the case was by agreement submitted for a final decree upon the present record a perpetual injunction will be granted enjoining the defendants from further collection from plaintiff of the tax involved and defendants' motion to dismiss is denied.

BOURQUIN, District Judge.

I concur in the result for that (pretermitting all else), although plaintiff is a "dealer" in motor fuels, as defined by this confused statute, it sells none; and in consequence, neither in words nor by the interpretation permissible of tax and penal statutes, is it within the taxing terms of said statute which are limited to that class of dealers who engage "in the sale of motor fuels."