**SOLTERO v. DESCARTES, Treasurer of Puerto Rico et al.**

No. 4567.

United States Court of Appeals
First Circuit.

Argued Oct. 2, 1951.

Decided Nov. 8, 1951.

F. Fernandez Cuyar, San Juan, Puerto Rico, for appellant.

J. B. Fernandez Badillo, Asst. Atty. Gen. of Puerto Rico (Victor Gutierrez Franqui, Atty. Gen., of Puerto Rico, with him on the brief), for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico affirming a judgment rendered by the Tax Court of Puerto Rico involving the levy of the 5%

Victory Tax [1] of Puerto Rico under "conditional payments" received by the appellant under the Sugar Act of 1937, 7 U.S.C.A. § 1100 et seq. Appellant's Motion for Reconsideration was denied on August 4, 1950 by the Supreme Court of Puerto Rico.

The jurisdiction of this court is invoked under the provisions of Title 28 U.S.C. § 1293.

On October 26, 1945, the Treasurer of Puerto Rico levied taxes on appellant, Augusto R. Soltero, under the Victory Tax Act, with interest and penalties, in the amounts of $80.15, $87.26 and $53.93 on alleged compensation allegedly received by the appellant from the Agricultural Adjustment Administration and corresponding to the crop years 1942, 1943 and 1944 and regarded as received during the years 1943, 1944 and 1945.

The appellant contends in his "Statement of Points" that (1) The Victory Tax Act levied a tax on gross income and that the conditional payments received by farmers under the Sugar Act of 1937 are gross receipts from interstate commerce and that

---

1. "An Act to Provide Revenues for the People of Puerto Rico through the Levying of a Certain Additional Income Tax Which Shall Be Known as 'The Victory Tax'; to Appropriate Funds for the Administration of This Act, and for Other Purposes", approved December 7, 1942, and amended on May 10, 1943, and May 15, 1943. Laws P.R.1942, p. 160, Laws P.R.1943, pages 146 and 630 respectively.

"Section 1. A tax of five (5) per cent upon the gross income of every individual, in excess of fifteen dollars and five cents ($15.05) a week, for interest, rents, salaries, wages, day wages, fees, donations, compensations, remunerations, commissions, premiums, dividends, benefits in partnerships, whether civil or commercial, annuities, and any other income of whatever nature that is in cash, is determinable, and is not obtained from transactions in connection with contracts of purchase and sale in which those who receive it may have acted as contracting parties, or from reimbursements, returns of deposits, liquidations, inheritances, loans, payments on loans, and other similar operations, is hereby levied, and shall be collected and paid in addition to any other tax levied by the Income Tax Act of 1924, and up to six (6) months after the cessation of hostilities between the United States of America and Germany, Italy, and Japan. Without this being subject to interpretation as a limitation of the terms 'salaries', 'wages' and 'day wages', the same refer also to every kind of salaries, wages and day wages paid in Puerto Rico by the Government of the United States of America. In the case of rents, there shall be deducted also as an exemption any amount actually paid as interest for liens on the property producing the rent. Of the income subject to taxation by this Act there shall be deducted also, as exemptions, the amounts received as compensation for labor accidents; scholarships; the sums paid by the taxpayer during the taxable year for premiums on his life insurance policies, or on the life insurance policies of his wife or children, and on insurance policies against accidents, or for educational purposes, up to an aggregate insurance of twenty-five thousand (25,000) dollars; the sums obtained or collected on life insurance policies, or on insurance policies against accidents or for educational purposes during the life of the insured, and the sums paid as compensation for cultural or artistic activities sponsored by the University of Puerto Rico or by any organization or association not for pecuniary profit. By gross income shall be understood every sum of money derived from the sources above enumerated as subject to taxation which is actually received by the taxpayer, or deposited or assigned in his favor or for his benefit. The word 'payment' as used in this Act shall have also that same meaning.

\* \* \* \* \* \* \*

"The word 'individual' as used in this Act, shall mean a natural person and shall include: Residents of Puerto Rico, married or single, without application of the provisions of the Civil Code relative to conjugal partnership, and all natural persons residing or domiciled outside of Puerto Rico, whether or not citizens of the United States of America and of Puerto Rico, if these persons receive or are to receive income from any one or more sources listed as taxable in this Act, and said income is derived from causes established in Puerto Rico and the source of payment is located in Puerto Rico.

"The tax levied by this Act shall be collected and paid from and after January 1, 1943.

"This additional income tax shall be known as 'The Victory Tax'. It may be so cited and shall be so cited in the body of this Act."

such a tax, if construed as applicable to such conditional payments restrains interstate commerce and is in conflict with the commerce clause of the constitution; (2) The Victory Tax, if applied to conditional payments, violates paragraphs 1 and 22 of Section 2 of the Organic Act for Puerto Rico, Title 48 U.S.C.A. § 737 as well as the Fourteenth Amendment to the Constitution providing for the equal protection of the laws insofar as the said tax levies a 5% gross income tax on individuals and fails to levy the same tax on partnerships, communities, successions and other groups of individuals who are engaged in the same activities and who receive the same conditional payments; (3) assuming the validity of the tax, the courts below erred in holding that the conditional payments provided by the Sugar Act are "a subsidy to protect the sugar cane growers" and, as such, not derived from a contract of sale but rather the payments received and sought to be taxed here were part of the consideration paid to him for sugar sold and delivered through a written contract of sale which income is specifically exempt from taxes; (4) the Tax Court of Puerto Rico held that the conditional payments referred to represent reimbursements, if not totally, at least in part of the additional expenses incurred by sugar cane growers in complying with the various requirements of the Sugar Act to entitle sugar cane growers to payments and in view of such holding and because the tax act provides that reimbursements are not subject to the tax, the courts erred in holding the tax was properly imposed.

During the years 1942 to 1945 the appellant grew sugar cane which was ground into sugar at Central Victoria, a sugar mill in Carolina, Puerto Rico, under an agreement whereby the mill got 35% of the sugar so obtained and appellant the remaining 65%. Appellant's portion of the sugar was left at the mill with instructions that it be sold for him. The sugar was sold by the sugar mill to the Commodity Credit Corporation, a corporate agency of the United States, in accordance with purchase contracts providing for the sale of sugar processed by the mill on yearly crop bases. Once these agreements were finally liquidated and set-tled, the mill notified appellant with a statement showing in detail the amount of money due him for his share of the sugar sold to Commodity. This money was paid to appellant by checks of the sugar mill. In addition to the above liquidated proceeds from the sugar sold and in compliance with the purchase contracts, appellant received, again by checks of the sugar mill, a subsidy from the United States through Commodity. The sugar mill participated in this subsidy with the appellant. This was all that appellant received as a result of the sale of his sugar to the Commodity Credit Corporation through Central Victoria.

The appellant also received additional money in the form of conditional payments under Subchapter III of the Sugar Act of 1937, as amended, Title 7 U.S.C.A. § 1131, which were paid to him upon his compliance with the conditions established by the Sugar Act. He received conditional payments amounting to $881.17 for 1942; $1389.45 for 1943 and $1224.72 for 1944, by checks from the Treasurer of the United States.

The appellant did not include in his tax returns filed under the Victory Tax Act the said conditional payments received by him. The insular treasurer gave him opportunity to file additional returns and pay the tax. The appellant apparently refused to do this and the treasurer consequently assessed tax deficiencies on said conditional payments. It is the tax on these conditional payments which is in controversy here. It does not appear that any Victory Tax was assessed on or paid by appellant on the proceeds from the sale of appellant's sugar to Commodity, nor on the subsidy paid to him by that corporation.

The appellant concedes that Puerto Rico has full power under Sections 3 and 37 of the Organic Act, 48 U.S.C.A. §§ 741, 821, to enact the taxing act involved here and he does not question the power of the insular legislature to levy or collect income taxes or any other tax. He, however, does attack as invalid the application of the Victory Tax which he claims reduces the amount of the conditional payments. It is only this particular application of the tax

that the appellant questions and not the statute itself.

The appellant disagreed with the imposition of the tax on the conditional payments and commenced proceedings in the insular Tax Court.

The Supreme Court of Puerto Rico ruled that the payments received by the appellant from the Federal Government were not derived from a contract of sale and consequently were not entitled to exemption under the Victory Tax Act. This is a reasonable interpretation. The payments were made to sugar cane growers upon their compliance with the conditions prescribed by Subchapter III of the Sugar Act of 1937, such as those pertaining to child labor, wage standards, proportionate share production, soil preservation, etc. The conditional payments were received by growers from the United States Secretary of Agriculture by checks of the Treasurer of the United States with which the sugar mill had nothing to do as seller and liquidator of appellant's sugar. The conditional payments were estimated on 100% of the sugar produced by the appellant although 35% of the sugar belonged to the sugar mill under the grinding agreement. These payments related to sugar production rather than the sale of sugar. The appellant stated, "I was bound to produce a certain amount of sugar, and if I did not, they would not pay me." It also appears that had the sugar not been delivered for sale, because of disaster such as flood, fire, etc., still the producer would receive some payments. Certainly such factors cast serious doubt on the alleged contractual origin of these conditional payments. They go far in justifying the holding of the court below that the conditional payments received by appellant were not derived from a contract of sale, and, therefore, are not exempt under the Victory Tax Act. Cf. United States v. Kelly, D.C., 69 F.Supp. 89.

The Victory Tax also exempts income "obtained * * * from reimbursements." The insular Tax Court in the conclusion of its first opinion used the word "reimbursement" in the following language: "To comply with said conditions * * * he had to make some expenses, in addition to those which he used to make in his business of planting, cultivating, and harvesting of sugar cane and, hence, said 'conditional payments' represented, if not totally, at least in part, a reimbursement of said expenses."

The Supreme Court of Puerto Rico in its first opinion and in remanding the case gave instructions to the Tax Court to decide " * * * why the conditional payments * * * constitute, under Section 1 of the Victory Tax Act, a reimbursement, if not totally, at least in part, of the expenses incurred by them by reason of the Sugar Act of 1937."

The Tax Court, in its second opinion, dismissed the complaint because it lacked evidence to determine " * * * what portion of the so-called conditional payments corresponds to the reimbursement of the additional costs incurred by the petitioner * * *."

The Supreme Court stated in its second opinion that the " * * * evidence contained nothing enabling the court to determine what portion of the conditional payments constituted the alleged reimbursement. * * * "

After disposing of various points raised by appellant, the Supreme Court affirmed the Tax Court's decision dismissing the complaint. This decision is not so "inescapably wrong" or "patently erroneous" to warrant reversal. See Monagas v. Vidal, 1 Cir., 170 F.2d 99. The fact remains that the appellant has not proved the existence of additional costs or expenses which would be the basis of any reimbursement. There is nothing in the record aside from speculative theory to indicate how much, if any, additional expenditures were made by appellant to qualify him for the "conditional payments" under the Sugar Act; hence there was no basis for the finding that the whole or some definite part of the conditional payments received constituted income "obtained * * * from reimbursements" within the meaning of the exemption contained in Section 1 of the Victory Tax Act. As stated by the Tax Court:

"Since the construction given by the Supreme Court to the Victory Tax Act is binding on this Court it seems obvious that.

we must have evidence to enable us to make a specific determination of what portion of the so-called conditional payments corresponds to the reimbursement of the additional cost incurred by the petitioner in paying the wages to workmen in order to be entitled to receive said amounts from the Federal Government. In the absence of this evidence, notwithstanding the fact that appellant was given the opportunity to introduce it, we feel bound to dismiss the complaint herein."

It is a well established rule that the findings of fact of the Supreme Court of Puerto Rico when supported by evidence will be adopted by this court. The same rule applies on the motion for reconsideration. Reyes v. La Capital De Puerto Rico, 1 Cir., 106 F.2d 199.

The burden was on the appellant to show how much he spent to entitle him to reimbursement and this he failed to do. All appellant has shown is that he has complied with the Sugar Act entitling him to conditional payments. How much, if any, of these conditional payments were reimbursements is not clear.

In coming to appellant's argument on the commerce clause of the Constitution, it is appropriate to note the language of this court in Buscaglia v. Ballester, 162 F.2d 805, at pages 806, 807, certiorari denied 332 U.S. 816, 68 S.Ct. 154, 92 L.Ed. 393, where it was said:

"The commerce clause gives Congress plenary power to regulate our foreign and interstate commerce and thus as a necessary consequence it has the secondary effect of a restriction upon the power of the states in the premises. It thus has two aspects, but in neither of them, either as a grant of federal power or as a necessarily consequential limitation upon state power, does it affect Puerto Rico. In its aspects of a grant of power to the federal government it adds nothing to the comprehensive power given to Congress by the Constitution, Art. IV, Section 3, Cl. 2, to legislate with respect to national territory, and it can have no consequential effect of limiting territorial action since Congress already has the power under Art. IV, Section 3, Cl. 2, supra, to limit such action to any extent it chooses, even to the extent of annulling local legislation. See § 34 of the Organic Act, 39 Stat. 951, 961, 48 U.S.C.A. § 822 et seq."

Congress can annul the acts of the insular legislature should their operation impinge upon interstate commerce. Yet Congress has not acted to annul this Victory Tax Act nor has Congress prohibited the Act's taxation of the conditional payments under the Sugar Act. The broad power to tax given by Congress to Puerto Rico includes the power to levy a tax on income. Title 48 U.S.C.A. § 741.

The question remains whether this power to tax has been exceeded by applying the tax to these conditional payments so as to make it a tax on gross receipts which burdens interstate commerce or a federal instrumentality. The appellant states in his brief: "In the Sugar Act, Congress specifically provided for a payment of 80 cents per hundred pounds of sugar to producers who comply with the conditions set forth in the statute. Puerto Rico is now seeking to uphold an application of its Victory Tax which would effectively reduce the payment to only 76 cents. It is this specific application of the taxing act, and *none other,* that appellant assails. * * *"

Although denominated a "gross income" tax, there are many deductions allowed the taxpayer by Section 1 of The Victory Tax Act. Thus the deductions or exemptions indicate that it more closely resembles a net income tax. A tax on net income is not a burden on interstate commerce. U. S. Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135. It certainly is not a gross receipts tax which is generally stricken down as invalid. The appellant was free to use the conditional payments as he chose. It has been held that subsidies somewhat like these payments were properly taxable under the federal tax law. Baboquivari Cattle Co. v. Commissioner of Internal Rev., 9 Cir., 135 F.2d 114; G. A. Stafford & Co. v. Pedrick, 2 Cir., 171 F.2d 42.

The contention that the tax burdens an instrumentality of the United States is likewise without merit. There is no clear

760

and convincing evidence that this Victory Tax thwarts the Sugar Act of 1937 so as to defeat congressional policy. See Rivera v. Buscaglia, 1 Cir., 146 F.2d 461.

■ The appellant's argument that the tax violates the equal protection clause of the Organic Act because it discriminates against individuals and favors artificial entities is without merit. The classification is not unreasonable. In the Rivera case, supra, 146 F.2d at page 465, this court said: " * * * In the tax field, more than in any other, 'legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.' Madden v. Kentucky, 1940, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 125 A.L.R. 1383. Since the tax now before us is a tax on gross income, its application to receipts from sales might have been regarded by the Legislature as having undesirable features of a sales tax. There are many conceivable grounds on which it might not have been unreasonable for the Legislature to make an exception of this distinctive category of income. The classification here was within the area of legislative discretion."

In South Porto Rico Sugar Co. v. Buscaglia, 1 Cir., 154 F.2d 96, 100, we said: " * * * the burden is on the one who attacks as invalid a legislative enactment to negative every conceivable basis which might support it. * * * "

It is conceivable that the legislature of Puerto Rico considered this tax measure as an anti-inflation device during the war period. See Rivera v. District Court, 62 P. R.R. 491. The distinction between individuals and artificial persons or associations is not unusual in the federal tax structure. We cannot say, in the circumstances here, that the distinction made is so oppressive or discriminatory as to make the tax invalid.

The judgment of the Supreme Court of Puerto Rico is affirmed.