*84 So.2d 810.*

**Rufus W. FONTENOT, Collector of Revenue, State of Louisiana**

**v.**

**JOHN I. HAY COMPANY.**

No. 41858.

Dec. 12, 1955.

Rehearing Denied Jan. 16, 1956.

Lemle & Kelleher, Harry B. Kelleher, Thomas F. Jordan, New Orleans, for defendant-appellant.

George C. Gibson, Baton Rouge, for appellee.

MOISE, Justice.

John I. Hay Company appeals from an adverse judgment.

The proceedings were summary. The rule was made absolute.

Rufus W. Fontenot, Collector of Revenue, State of Louisiana, instituted these proceedings under the provisions of Title 47, Section 1574, of the LSA–Revised Statutes of 1950. He sought to enforce collection of income taxes for the years 1947, 1948, 1949 and 1950, allegedly due the State of Louisiana by John I. Hay Company on that part of its net income attributable to interstate business done or performed within the State of Louisiana. The aggregate claim, for taxes, interest and attorney fees, was fixed at the sum of $11,638.32.

Appellant contends that these taxes violate the interstate commerce clause of the Constitution of the United States, Article 1, § 8, Clause 3, the due process clause of the Louisiana Constitution of 1921, Article 1, § 2, and the due process clause of the Constitution of the United States as found in the Fourteenth Amendment.

A stipulation of facts was filed, which, in substance, recites that John I. Hay Company is incorporated under the laws of the State of Delaware and licensed to do business only in the States of Delaware and Illinois; that it operates as a common carrier in the interstate transportation of commodities generally between ports and points on the Illinois Waterway, the Mississippi River below and including Cap au gris, Missouri, the Ohio River between Rosiclaire, Illinois and its confluence with the Mississippi River, the Tennessee River between Gilbertville, Kentucky and its confluence with the Ohio River, and the Gulf Intracoastal Waterway in Louisiana and Texas as far west as Houston, Texas, and Brownsville, Texas; that it brings cargoes into and through Louisiana and takes cargoes out of Louisiana; that none of its shipments originate and terminate in the State of Louisiana; and that an office is maintained in Louisiana and employees are present in this State.

The State rests its case not only on the law, but also on the method of apportionment. Defendant admits that the apportionment made is correct—if the taxes can be constitutionally imposed.

■ There is no doubt that the power to regulate interstate commerce is vested solely in the Federal Government under Article 1, § 8, Clause 3, of the Constitution of the United States of America. But, do these taxes, as administered and applied, constitute an actual regulation of interstate commerce? We believe that they do not constitute a regulation of interstate commerce. Louisiana Income Tax Laws are applicable to the defendant, for the reason that the taxes sought to be collected were imposed upon that part of defendant's net income attributable to its interstate business done or performed within the borders of the State of Louisiana.

The constitutional authorization for income taxes is found in Article X, § 1, of the LSA–Constitution of 1921, and provides in part:

"Equal and uniform taxes may be levied upon net incomes * * *"

Dart's Statutes of 1939, Section 8587.1, reads:

"There shall be levied, collected and paid for each taxable year a tax upon the net income of residents and non-residents, estates, trusts, domestic and foreign corporations, as hereinafter provided * * * *Foreign Corporations shall be taxed on net income from sources within the state, * * *.*"

■ These taxes, we believe, are imposed on the net income from sources within the State.

Dart's 8587.7 defines "net income" as follows:

"Net income means the gross income computed under Section 8 (8587.8), less the deductions allowed by Section 9 (8587.9)."

Dart's 8587.34(b), providing for taxes from sources partly within and partly without the State of Louisiana, reads:

"Nonresident individuals and foreign corporations: In the case of a nonresident individual or foreign corporation, items of gross income, expenses, losses and deductions, from whatever source received or incurred, not otherwise exempted by this act, shall be included in the taxpayer's return; but, for the purpose of this act, the amount of tax shall be computed only upon the net income earned within or derived from sources within this state. In arriving at the net income earned within or derived from sources within the State of Louisiana, items of gross income, expenses, losses and deductions, not otherwise exempted by this act, shall be allocated or apportioned to sources within or without the State of Louisiana, under the rules and regulations prescribed by the supervisor * * * Gains profits, and income from:

"(1) Transportation or other services rendered partly within and partly without the State of Louisiana shall

be treated as derived from sources within and partly from sources without the State of Louisiana, * * *."

The Louisiana Revised Statutes of 1950 are essentially the same as the above quoted.

Since the statutes declare that the income shall be treated as derived from sources within and partly from sources without the State of Louisiana, certainly that part of defendant's income which is earned within and derived from sources within the State must subject defendant to a net income tax. Defendant does not carry a load from New Orleans, Louisiana to Houston, Texas gratis, nor does it only charge to carry a load from the Louisiana state border to Houston; it charges for the whole trip. Therefore, every part of the charge on loads in Louisiana is in payment of the transportation in Louisiana. Furthermore, to make this concept perfectly clear, defendant has stipulated that these taxes are correctly computed if they can be constitutionally imposed.

A careful analysis of the complexities of the various decisions rendered by the United States Supreme Court will show us the right. The greatest exponent of the United States Constitution was Chief Justice Marshall, but, even as great as he was, we cannot apply the principles of his time to these times. In our modern times, the United States Supreme Court must be controlled by the aspirations and changes of the present. At the time our greatest Chief Justice held sway, there was no such thing as an income tax, and we cannot pinpoint all of his magnificent rulings to cases that come under his day and time.

Along the same line of thought, in discussing the commerce clause of the Federal Constitution, Article 1, § 8, we find the following pronouncement of the United States Supreme Court in the case of Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 276, 91 L.Ed. 265, to be pertinent here:

"The power of the States to tax and the limitations upon that power imposed by the Commerce Clause have necessitated a long, continuous process of judicial adjustment. The need for such adjustment is inherent in a federal government like ours, where the same transaction has aspects that may concern the interests and involve the authority of both the central government and of the constituent States.

"The history of this problem is spread over hundreds of volumes of our Reports. To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future. Suffice it to say that especially in this field opinions must be read in the setting of the particular cases and as the product of preoccupation with their special facts."

 Shadows must not be mistaken for substance when we consider a claim of immunity from taxation. The tax here sought

to be summarily collected is not in form nor in substance a tax on interstate commerce; nor is it a tax on gross income; nor is it a franchise tax. It is imposed only after defendant has ascertained all of its profits, all of its losses, and all of its expenses in the conduct of its business within the State of Louisiana. If there should be no income earned within the State, the defendant could not be taxed. In the case of State v. Albert Mackie Co., 144 La. 339, 80 So. 582, 584, the pronouncement of our own Court is in accord with the views here expressed. It states:

"* * * It is well settled that a state tax that affects interstate or foreign commerce only incidentally and not directly, as, for example, a tax upon property that is used in such commerce, or a tax upon net incomes or profits that have been derived from such commerce, or a fixed tax levied upon a local business without discriminating against interstate business, is not repugnant to the commerce clause of the federal Constitution (article 1, § 8). * * *"

In the case of United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 501, 62 L.Ed. 1135, the United States Supreme Court went on to say:

"* * * in Peck & Co. v. Lowe * * * 247 U.S. 165, 38 S.Ct. 432, 62 L.Ed. 1049, we held that the Income Tax Act of October 3, 1913, c. 16, * * * when carried into effect by

imposing an assessment upon the entire net income of a corporation, approximately three fourths of which was derived from the export of goods to foreign countries, did not amount to laying a tax or duty on articles exported within the meaning of article 1, § 9, cl. 5, of the Constitution. The distinction between a direct and an indirect burden by way of tax or duty was developed, and it was shown that an income tax laid generally on net incomes, not on income from exportation because of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the recipient of the income was free to use it as he chose, was only an indirect burden.

"* * * A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and gen-

eral burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the states are not exempted by the federal Constitution because they happen to be engaged in commerce among the states."

See, Soltero v. Descartes, 1 Cir., 192 F.2d 755.

Defendant relies on the case of Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 510, 95 L.Ed. 573, one of the most recent cases in which the United States Supreme Court passed upon the invalidity of a tax under the Commerce Clause, U.S.C.A.Const. art. 1, § 8, cl. 3. We gather from its language that the decision in that case holds that the individual sovereign states cannot impose a franchise tax on a business which operates in interstate commerce because of its direct application to interstate trade. There a franchise tax was imposed under the Connecticut Corporation Business Tax Act of 1935, § 418c, measured on net income derived within the state and assessed in addition to the State Income Tax. We quote at length from the decision of Justice Burton, disallowing the tax, to which there were three dissents:

"The vital issue which remains is whether the application of the tax to petitioner violates the Commerce Clause of the Federal Constitution. We come to that issue now with the benefit of a statement from the state court of final jurisdiction showing ex-

actly what it is that the State has sought to tax. The all-important 'operating incidence' of the tax is thus made clear. After full consideration and with knowledge that its statement would be made the basis of determining the validity of the application of the tax under the Commerce Clause, that court said:

" 'The tax is then a tax or excise upon the franchise of corporations for the privilege of carrying on or doing business in the state, whether they be domestic or foreign. Stanley Works v. Hackett, 122 Conn. 547, 551, 190 A. 743. Net earnings are used merely for the purpose of determining the amount to be paid by each corporation, a measure which, by the application of the rate charged, was intended to impose upon each corporation a share of the general tax burden as nearly as possible equivalent to that borne by other wealth in the state. As regards a corporation doing business both within and without the state, the intention was, by the use of a rather complicated formula, to measure the tax by determining as fairly as possible the proportionate amount of its business done in this state. There is no ground upon which the tax can be said to rest upon the use of highways by motor trucks * * *.' [Spector Motor Co. v. Walsh] 135 Conn. [37] at pages 56–57, 61 A.2d [89] at pages 98–99.

"The incidence of the tax is upon no intrastate commerce activities because there are none. Petitioner is engaged only in interstate transportation. Its principal place of business is in Illinois. It is authorized by the Interstate Commerce Commission to do certain interstate trucking and by the Connecticut Public Utilities Commission to do part of such interstate trucking in Connecticut. Petitioner has filed with the Secretary of State of Connecticut a certificate of its incorporation in Missouri, has designated an agent in Connecticut for service of process and has paid the state fee required in that connection. It has not been authorized by the State of Connecticut to do intrastate trucking and does not engage in it. See Terminal Taxicab Co. v. Kutz, Com'r of District of Columbia, 241 U.S. 252, 253–254, 36 S.Ct. 583, 584, 60 L.Ed. 984.

\* \* \* \* \* \*

"The tax does not discriminate between interstate and intrastate commerce. Neither the amount of the tax nor its computation need be considered by us in view of our disposition of the case. The objection to its validity does not rest on a claim that it places an unduly heavy burden on interstate commerce in return for protection given by the State. The tax is not levied as compensation for the use of highways or collected in lieu of an ad valorem property tax. Those bases of tax-

ation have been disclaimed by the highest court of the taxing State. It is not a fee for an inspection or a tax on sales or use. It is a 'tax or excise' placed unequivocally upon the corporation's franchise for the privilege of carrying on exclusively interstate transportation in the State. It serves no purpose for the State Tax Commissioner to suggest that, if there were some intrastate commerce involved or if an appropriate tax were imposed as compensation for petitioner's use of the highways, the same sum of money as is at issue here might be collected lawfully from petitioner. Even though the financial burden on interstate commerce might be the same, the question whether a state may validly make interstate commerce pay its way depends first of all upon the constitutional channel through which it attempts to do so. Freeman v. Hewit, 329 U.S. 249, 67 S. Ct. 274, 91 L.Ed. 265; McLeod v. J. E. Dilworth Co., 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304.

"Taxing power is inherent in sovereign states, yet the states of the United States have divided their taxing power between the Federal Government and themselves. They delegated to the United States the exclusive power to tax the privilege to engage in interstate commerce when they gave Congress the power 'To regulate Commerce with foreign Nations, and among the several States \* \* \*.'

U.S.Const. Art. I, § 8, cl. 3. While the reach of the reserved taxing power of a state is great, the constitutional separation of the federal and state powers makes it essential that no state be permitted to exercise, without authority from Congress, those functions which it has delegated exclusively to Congress. Another example of this basic separation of powers is the inability of the states to tax the agencies through which the United States exercises its sovereign powers. See McCulloch v. [State of] Maryland, 4 Wheat. 316, 425–437, 4 L.Ed. 579; Brown v. [State of] Maryland, 12 Wheat. 419, 445–449, 6 L.Ed. 678; Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504.

"The answer in the instant case has been made clear by the courts of Connecticut. *It is not a matter of labels. The incidence of the tax provides the answer. The courts of Connecticut have held that the tax before us attaches solely to the franchise of petitioner to do interstate business. The State is not precluded from imposing taxes upon other activities or aspects of this business which, unlike the privilege of doing interstate business, are subject to the sovereign power of the State. Those taxes may be imposed although their payment may come out of the funds derived from petitioner's interstate business, provided the taxes are so imposed that their burden will*

*be reasonably related to the powers of the State and nondiscriminatory."* [Italics ours.]

"This Court heretofore has struck down, under the Commerce Clause, state taxes upon the privilege of carrying on a business that was exclusively interstate in character. The constitutional infirmity of such a tax persists no matter how fairly it is apportioned to business done within the state. * * *

"Our conclusion is not in conflict with the principle that, where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the state, including both interstate and intrastate. * * *

"In this field there is not only reason but long-established precedent for keeping the federal privilege of carrying on exclusively interstate commerce free from state taxation. To do so gives lateral support to one of the cornerstones of our constitutional law—McCulloch v. [State of] Maryland, supra."

We believe that the very language of the Court in the Spector case, supra, shows that the tax is entirely different from that imposed in the present matter. The incidence of the present tax is income earned

in Louisiana, not the right to transport goods on waters located in Louisiana. There is no burden on nor interference with the defendant's interstate transportation business.

Defendant further relies on the recent case of Railway Express Agency, Inc. v. Virginia, 347 U.S. 359, 74 S.Ct. 558, 563, 98 L.Ed. 757, and calls our attention to the following statement:

"* * * It is enough to say that we recently have ruled that local incidents such as gathering up or putting down interstate commodities as an integral part of their interstate movement are not adequate grounds for a state license, privilege or occupation tax. Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573; Memphis Steam Laundry Cleaner, Inc. v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436; Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U.S. 157, 74 S.Ct. 396, [98 L. Ed. 583]; New Jersey Bell Tel. Co. v. State Board [of Taxes & Assessments], 280 U.S. 338, 50 S.Ct. 111, 74 L.Ed. 463."

The above quoted case is not apposite, in that it involved a privilege tax and the formula employed for assessment. It makes no mention of income taxes, nor does it abandon the local incident theory. It merely states that some local incidents, such as gathering up or putting down interstate commodities, are not grounds for

license, privilege or occupation tax. The three cases cited therein did not involve net income taxes. In the case of New Jersey Bell Telephone Co., supra, a direct tax on gross receipts derived from interstate commerce was held invalid. The Memphis Steam Laundry case, supra, held that a Mississippi state tax upon persons soliciting business for laundries not licensed in the state unconstitutionally burdened interstate commerce. The Michigan-Wisconsin Pipe Line Co. case, supra [347 U.S. 157, 74 S.Ct. 400], involved a Texas tax on the occupation of gathering gas measured by the entire volume of gas taken, as applied to an interstate natural gas pipeline company, where the taxable incidence was the taking of gas from the outlet of an independent gasoline plant within the state for the purpose of immediate interstate transmission. There it was held that the tax infringed the commerce clause, and the Court made the following pertinent statement:

"* * * Under the Commerce Clause interstate commerce and its instrumentalities are not totally immune from state taxation, absent action by Congress. Frequently it has been said that interstate business must pay its way, Postal Tel. Cable Co. v. City of Richmond, 1919, 249 U.S. 252, 259, 39 S.Ct. 265, 266, 63 L.Ed. 590 [594]; Western Live Stock v. Bureau of Revenue, 1938, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823, [115 A.L.R. 944]; and the Court has done more than pay lip service to this idea. Nu-

merous cases have upheld state levies where it is thought that the tax does not operate to discriminate against commerce or unduly burden it either directly or by the possibility of multiple taxation resulting from other taxes of the same sort being imposed by other states. The recurring problem is to resolve a conflict between the Constitution's mandate that trade between the states be permitted to flow freely without unnecessary obstruction from any source, and the state's rightful desire to require that interstate business bear its proper share of the costs of local government in return for benefits received. Some have thought that the wisest course would be for this Court to uphold all state taxes not patently discriminatory, and wait for Congress to adjust conflicts when and as it wished. But this view has not prevailed, and the Court has therefore been forced to decide in many varied factual situations whether the application of a given state tax to a given aspect of interstate activity violates the Commerce Clause. It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it. Memphis Natural Gas Co. v. Stone, 1948, 335 U.S. 80, 87, 68 S.Ct. 1475, 1478, 92 L.Ed. 1832 [1838]. Western

Live Stock v. Bureau of Revenue, supra, 303 U.S. at page 258, 58 S.Ct. at page 550."

The following pronouncement made in the earlier case of Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 548, 82 L.Ed. 823, is a thorough statement of the relation between interstate commerce and taxation by the sovereign states:

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way,' Postal Telegraph-Cable Co. v. [City of] Richmond, 249 U.S. 252, 259, 39 S.Ct. 265, 266, 63 L.Ed. 590, 594; * * * and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business. He is subject to a property tax on the instruments employed in the commerce, Western Union Telegraph Co. v. Attorney General, 125 U.S. 530, 8 S.Ct. 961, 31 L.Ed. 790; * * * and if the property devoted to interstate transportation is used both within and without the state, a tax fairly apportioned to its use within the state will be sustained, Pullman's Palace-Car Co. v. [Commonwealth of] Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 * * *. Net earn-

ings from interstate commerce are subject to income tax, United States Glue Co. v. [Town of] Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135 * * * and if the commerce is carried on by a corporation, a franchise tax may be imposed, measured by the net income from business done within the state, including such portion of the income derived from interstate commerce as may be justly attributable to business done within the state by a fair method of apportionment, Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 41 S.Ct. 45, 65 L.Ed. 165; * * *."

The cases of State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267; Matson Nav. Co. v. State Bd. of Equalization, 297 U.S. 441, 56 S.Ct. 553, 80 L.Ed. 791, 793; and West Pub. Co. v. McColgan, 27 Cal.2d 705, 166 P.2d 861; Id., 328 U.S. 823, 66 S.Ct. 1378, 90 L.Ed. 1603, are all affirmatives of the fact that a state may collect an income tax from a corporation engaged in interstate commerce, based on its net income derived within the state.

Defendant argues that the case of Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, shows a change in the attitude of the United States Supreme Court. That case is not apposite. There the Court recognized an impediment upon the current of commerce, and it held that a tax imposed under the Indiana Gross Income Tax Act on

gross receipts of the sale of securities by a resident owner through a nonresident broker was invalid as a tax on interstate commerce in violation of the commerce clause.

█ On the question of due process, the United States Supreme Court, in upholding an ad valorem tax under assessments based on the ratio between the total number of miles of appellees' lines in Louisiana and the total number of miles of the entire line, stated in the case of Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 434, 93 L.Ed. 585:

"* * * The problem under the Commerce Clause is to determine 'what portion of an interstate organism may appropriately be attributed to each of the various states in which it functions.' Nashville, C. & St. L. R. Co. v. Browning, 310 U.S. 362, 365, 60 S.Ct. 968, 970, 84 L.Ed. 1254 [1255]. *So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State.* See [State of] Wisconsin v. J. C. Penney Co., 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 [270], 130 A.L.R. 1229. *Those requirements are satisfied if the tax is fairly apportioned to the commerce carried on within the State.*" [Italics ours.]

"* * * interstate commerce can be made to pay its way by bearing a

nondiscriminatory share of the tax burden which each State may impose on the activities or property within its borders. * * * We can see no reason which should put water transportation on a different constitutional footing than other interstate enterprises."

The taxes in the instant case meet the requirements set forth above, and we find no violation of the due process clause of either the State or Federal Constitution.

In the case of Best & Co., Inc. v. Maxwell, 311 U.S. 454, 61 S.Ct. 334, 335, 85 L.Ed. 275, it is stated:

"In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce."

Immunity from nondiscriminatory taxation, sought by private corporations because they use property in interstate commerce, cannot be based on a mere theoretical concept of interference with the commerce clause of the Federal Constitution. Under our dual system of government, the exercise of taxing power is equally essential to both. It often becomes necessary for the Court to make distinctions in the denial or assertion of the right to tax. In the instant case, the right to tax is clearly manifest.

For the reasons assigned, the judgment of the trial court is affirmed.